COURT OF APPEALS
DECISION
DATED AND FILED

November 19, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP940**

**STATE OF WISCONSIN**

Cir. Ct. No.  2013CV345

**IN COURT OF APPEALS
DISTRICT III**

EAGLE COVE CAMP & CONFERENCE CENTER, INC., A WISCONSIN NON-STOCK CORPORATION, ARTHUR G. JAROS, JR., AS CO-TRUSTEE OF THE ARTHUR G. JAROS, SR. AND DAWN L. JAROS CHARITABLE TRUST, AND AS TRUSTEE OF THE ARTHUR G. JAROS, SR. DECLARATION OF TRUST, AND AS TRUSTEE OF THE DAWN L. JAROS DECLARATION OF TRUST, WESLEY A. JAROS, AS CO-TRUSTEE OF THE ARTHUR G. JAROS, SR. AND DAWN L. JAROS CHARITABLE TRUST AND RANDALL S. JAROS, AS CO-TRUSTEE OF THE ARTHUR G. JAROS, SR. AND DAWN L. JAROS CHARITABLE TRUST,

   PLAINTIFFS-APPELLANTS-CROSS-RESPONDENTS,

 V.

COUNTY OF ONEIDA,

   DEFENDANT-RESPONDENT,

TOWN OF WOODBORO,

   DEFENDANT-RESPONDENT-CROSS-APPELLANT,

ONEIDA COUNTY BOARD OF ADJUSTMENT,

   DEFENDANT.

APPEAL and CROSS-APPEAL from an order of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. Eagle Cove Camp & Conference Center, Inc., and Arthur, Wesley, and Randall Jaros, as trustees of various family trusts (collectively, "Eagle Cove"), appeal an order dismissing their claims asserting various violations of their rights under the Wisconsin Constitution. These violations allegedly stem from Oneida County's and the Oneida County Board of Adjustment's refusal years ago to rezone certain real property on Squash Lake or to grant a conditional use permit on that property so that Eagle Cove could develop a year-round Bible camp.

¶2 Eagle Cove previously litigated numerous claims relating to these denials in federal court, including a claim for a violation of Eagle Cove's religious liberties under article I, section 18 of the Wisconsin Constitution. The federal district court, exercising both federal question and supplemental jurisdiction, dismissed all of Eagle Cove's civil claims on their merits, including its claim under the Wisconsin Constitution. The court declined, however, to take supplemental jurisdiction of a certiorari claim Eagle Cove had advanced against the board of adjustment, preferring to have that claim adjudicated in state court given the limited scope of certiorari review.

¶3 Eagle Cove subsequently commenced the present action, seeking not only certiorari review but also advancing a variety of civil claims under the Wisconsin Constitution. The circuit court dismissed the non-certiorari claims based upon its conclusion that claim preclusion applied, insofar as Eagle Cove

2

brought or could have brought the civil claims as part of its federal action. Eagle Cove appeals this determination and the denial of its motion for reconsideration, in which it asserted that claim preclusion should not apply because of an intervening change in the case law governing one of its federal law claims.

¶4     We conclude the circuit court properly dismissed Eagle Cove's non-certiorari claims and denied its motion for reconsideration. The parties in the federal action were the same as in this action, the federal litigation resulted in a judgment on the merits, and the claims in the two actions all arise out of the same transaction. Accordingly, Eagle Cove was required to bring all of its claims in that action. Further proceedings in state court are limited to Eagle Cove's certiorari claim, which the district court dismissed without prejudice.

¶5     The Town of Woodboro cross-appeals, asserting Eagle Cove's commencement and continuation of the state court action against it was frivolous. Applying WIS. STAT. § 895.044 (2017-18),[1] we agree that Eagle Cove's action against the Town was frivolous. Because Eagle Cove did not withdraw or correct the frivolous filings after being served with a motion for sanctions, we conclude the circuit court was required to award the Town damages consisting of the actual costs it incurred as a result of the frivolous action. We affirm the circuit court's decision in all other respects, but we reverse on the issue of sanctions and remand the matter to the circuit court for a determination of damages.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

## BACKGROUND

¶6 The procedural history underlying this appeal is long, but an understanding of that history is necessary to our analysis of the arguments on appeal. In particular, that history directly informs our application of principles of claim preclusion.

¶7 The Jaros family has long owned real property on Squash Lake within the jurisdictions of the Town of Woodboro and Oneida County.[2] Eagle Cove desires to use that land to operate a year-round Bible camp that will serve, among others, youth with medical disabilities. The proposed camp includes a chapel, classrooms, boarding accommodations, food service facilities including a commercial kitchen and dining hall, and recreational amenities like a soccer field. According to Eagle Cove, the "majority of the Bible Camp's activity will involve evangelism, worship, prayer, meditation, devotional Scripture reading, discipleship and role-modeling and Christian educational instruction."

¶8 Under Oneida County's zoning ordinance, a portion of the subject property is zoned as residential and farming (District 4) and the remainder is zoned as single-family residential (District 2). The Town has accepted and approved the County's zoning ordinance as its own. It is undisputed that the zoning ordinance does not explicitly refer to a "Bible camp" or "religious camp" as an authorized use in these or any other districts.

---

[2] The subject property consists of approximately 34 acres containing between 550 and 600 feet of shoreline. Two of the trusts involved in this litigation own an additional 24 acres of undeveloped land directly to the north of the subject property. This additional land is also intended to be used for the benefit of the proposed Bible camp.

4

¶9 In 2005, Oneida County staff informed Arthur Jaros that recreational camps, religious or otherwise, are not allowable uses in areas zoned District 2 or District 4. Year-round recreational camps are permitted in Oneida County only on land that is either unzoned or zoned recreational (District 5) or general use (District 10). It is undisputed that none of those zoning designations exist within the Town.

¶10 Eagle Cove then submitted a petition to have the subject property rezoned as District 5. The Town's plan commission and the Town board held proceedings on the petition throughout the first half of 2006 and made a formal recommendation that Oneida County deny the petition. The County's zoning and planning committee, too, recommended that the petition be denied, and the Oneida County Board of Supervisors accepted the recommendations and denied the petition in August 2006.

¶11 Eagle Cove asserts that following the rezoning petition denial, it expended approximately $200,000 to prepare an application for a conditional use permit (CUP) that would allow for the use of the subject property as a Bible camp within the District 2 and District 4 classifications.[3] Eagle Cove filed an original application in 2006 and an amended application in 2008, and the application was deemed complete in March 2009. The County forwarded the application to the Town, but the County informed Eagle Cove that it did not expect the Town to recommend approval because the proposed use was not consistent with the subject property's zoning districts. The Town ultimately recommended that the County

---

[3] Conditional uses for a zoning district are those land uses that are allowed in the district only with a CUP issued by the Oneida County Planning and Zoning Committee.

5

deny the CUP application, as did a staff report prepared for the Oneida County Zoning and Planning Committee.

¶12 Following a public hearing and a site visit, the zoning and planning committee denied the CUP application, adopting the reasons provided in the staff report. The committee specifically concluded that the proposed conditional use "would not conform to the applicable regulations of the district in which it would be located," and that the proposed use was incompatible with the subject property's existing zoning designations. The committee also concluded there were other locations within the County where Eagle Cove could obtain approval to construct the proposed Bible camp, and that the denial "would not make the religious exercise of the applicant effectively impracticable."

¶13 In September 2009, Eagle Cove appealed the CUP denial to the Oneida County Board of Adjustment. Following two public hearings and an opportunity for written submissions, on January 12, 2010, the board of adjustment voted to affirm the denial. The denial was memorialized in a written resolution on February 11, 2010.

¶14 Eagle Cove then commenced an action against the Town, the County, and the County's board of adjustment in the United States District Court for the Western District of Wisconsin. Invoking federal question jurisdiction under 18 U.S.C. § 1331, Eagle Cove raised numerous claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), a claim under the Americans with Disabilities Act, a claim under the Rehabilitation Act, and claims under the United States Constitution for violations of the Equal Protection Clause and the First Amendment's Free Exercise Clause. Invoking supplemental jurisdiction under 28 U.S.C. § 1367(a), Eagle Cove also brought state law claims

6

for a violation of the right to freedom of worship under WIS. CONST. art. I, § 18 and for certiorari review of the decisions of the County and its board of adjustment.

¶15    In February 2013, the district court granted the defendants' motion for summary judgment, concluding Eagle Cove had "no right to relief under RLUIPA, the United States Constitution or the Wisconsin Constitution."  The court determined the undisputed facts showed that Eagle Cove did "not meet their burden of establishing all the elements of proof under any of their claims."  After determining the Town, the County, and the board of adjustment were entitled to summary judgment on Eagle Cove's federal claims, the district court noted it would typically decline to exercise supplemental jurisdiction to decide the state law claims.  However, the court concluded that Eagle Cove's claim under the Wisconsin Constitution was "'doomed' for all the same reasons as its federal constitutional equivalent," and there would be no purpose for expending additional judicial resources to resolve the claim in state court.  The court therefore dismissed the state constitutional claim with prejudice, but it declined to exercise supplemental jurisdiction over Eagle Cove's certiorari claim and dismissed that claim without prejudice.

¶16    Eagle Cove appealed to the United States Court of Appeals for the Seventh Circuit, which affirmed the district court's decision.  *See Eagle Cove Camp & Conference Ctr., Inc. v. Town of Woodboro*, 734 F.3d 673 (7th Cir. 2013) (*Eagle Cove I*).[4]  The Seventh Circuit denied Eagle Cove's motion for

---

[4] As we will explain, the Seventh Circuit's analysis on one of the RLUIPA claims was later called into question by two decisions of the United States Supreme Court.  *See Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015) (recognizing abrogation).

rehearing and rehearing en banc. Eagle Cove then filed a petition for a writ of certiorari in the United States Supreme Court, which the Court ultimately denied.

¶17    Meanwhile, on November 27, 2013, Eagle Cove filed the present action in the Oneida County Circuit Court against the Oneida County Board of Adjustment, asserting a single count for certiorari review of the board's determinations. This action was stayed by stipulation pending the Supreme Court's decision on Eagle Cove's petition for a writ of certiorari. After the Supreme Court denied review, Eagle Cove filed an amended complaint adding the County and the Town as defendants. In addition to seeking certiorari review, Eagle Cove's amended complaint sought declaratory judgment on fifteen additional due process, religious burden/preference, and equal protection claims under article I of the Wisconsin Constitution.

¶18    The County (together with its board of adjustment) filed a motion to dismiss all counts except the certiorari claim. The County argued that claim preclusion and issue preclusion applied to each of Eagle Cove's fifteen new claims in this action because those claims had been or could have been litigated in the antecedent federal action. Additionally, it argued that only the board of adjustment was a proper party to Eagle Cove's certiorari claim, and that the scope of the certiorari claim was limited by the federal decisions in the prior action (e.g., Eagle Cove could not assert that the board acted contrary to law in any manner rejected as an independent claim in the federal lawsuit).

¶19    The Town joined in the County's arguments. Additionally, the Town emphasized that the federal district court had determined that the Town had no independent authority to grant or deny a zoning change or a CUP. Accordingly, the Town asserted that it could not be liable to Eagle Cove for the

8

denials, the claims against it were properly dismissed by the federal district court, and the parties were bound by that determination. Consequently, the Town moved for judgment on the pleadings and for sanctions against Eagle Cove for filing an action against it with no basis in fact or law.[5]

¶20 The circuit court decided the various motions on January 23, 2015. In deciding these motions, the court observed that there was no dispute Eagle Cove was entitled to bring its certiorari claim in state court. It concluded, however, that the remaining fifteen counts Eagle Cove raised in its amended complaint arose out of the same transaction that gave rise to all of the civil claims Eagle Cove had brought in the prior federal action. Thus, the court determined that Eagle Cove could have raised the present claims in the federal action. Moreover, the court concluded it was not clear that the district court would have declined to exercise supplemental jurisdiction over the present claims, as it had taken jurisdiction to decide Eagle Cove's state law constitutional claim.[6] The court dismissed the additional fifteen state law claims as claim precluded, but it declined to limit the scope of certiorari review. Additionally, the court declined to sanction Eagle Cove for filing a frivolous lawsuit, as it concluded there was a good faith basis for Eagle Cove to attempt to raise its state law claims.

¶21 Eagle Cove filed a motion for reconsideration, asserting the circuit court had erred in dismissing all but its certiorari claim. Specifically, Eagle Cove

---

[5] The County and board of adjustment also filed a motion for sanctions asserting portions of Eagle Cove's action were frivolous. Only the Town's motion for sanctions is at issue on appeal.

[6] Indeed, the circuit court determined that the district court likely would have exercised supplemental jurisdiction over these additional issues because they were "similar enough in nature to the federal issues that were actually raised and decided by the court."

contended, among other things, that the court had misapplied certain Wisconsin case law regarding the preclusive effect given to certiorari claims, incorrectly analyzed the issue of whether the district court would have exercised supplemental jurisdiction over additional state law claims, and failed to consider whether it was fair or just to give the federal judgment preclusive effect. Following responsive briefing, the court denied the motion at a hearing on April 22, 2015.

¶22 On May 14, 2015, Eagle Cove filed a "Renewed Motion for Reconsideration" in the circuit court. By this revised motion, Eagle Cove informed the court that in *Schlemm v. Wall*, 784 F.3d 362 (7th Cir. 2015), the Seventh Circuit had acknowledged that subsequent United States Supreme Court decisions established that it had incorrectly analyzed one of Eagle Cove's RLUIPA claims in the earlier federal action. Specifically, the Seventh Circuit concluded that its definition of a "substantial burden" under RLUIPA in Eagle Cove's appeal was too narrow; whereas it had defined a "substantial burden" as something that makes religious observance "effectively impracticable," the Supreme Court had held that a RLUIPA claim lies where there is a "serious violation" of one's religious beliefs. *Id.* at 364. Eagle Cove advised the circuit court that, as a result, it was seeking to reopen the federal court proceedings, and the state proceedings were stayed pending the outcome of those efforts.

¶23 The district court ultimately denied Eagle Cove's motion for relief from the judgment dismissing its federal lawsuit. *See Eagle Cove Camp & Conference Ctr., Inc. v. Town of Woodboro*, No. 10-CV-118-wmc, 2016 WL 6584687 (W.D. Wis. Aug. 11, 2016). Without commenting on whether the changed "substantial burden" standard would have made a material difference, the

district court concluded the Federal Rules of Civil Procedure did not provide an avenue to reopen the judgment based upon a change in the law.[7]  *Id.* at *2-*3.  In January 2017, the Seventh Circuit Court of Appeals adopted the district court's reasoning and affirmed the order denying relief.  ***Eagle Cove Camp & Conference Ctr., Inc. v. Town of Woodboro***, 674 F. App'x 566 (7th Cir. 2017) (***Eagle Cove II***).  The Seventh Circuit subsequently denied Eagle Cove's motion for rehearing en banc, and in October 2017, the United States Supreme Court denied Eagle Cove's petition for a writ of certiorari.

¶24    Proceedings then resumed in the circuit court on Eagle Cove's renewed motion for reconsideration.  Eagle Cove, expressly invoking WIS. STAT. § 806.07(1)(g) and (h), contended it was inappropriate to give the federal judgment preclusive effect because it was "now obvious that Eagle Cove should not have suffered summary judgment" on one of its RLUIPA claims.

¶25    Following responsive briefing, the circuit court denied Eagle Cove's renewed motion during an oral ruling on February 21, 2018.  The court concluded that absent a "sea change" in the law, a litigant may not avoid claim preclusion merely because a court has modified its approach to a particular legal question that could have been raised in the earlier proceeding.  The court, observing it had not yet entered a final judgment, found no basis to apply WIS. STAT. § 806.07 or to otherwise reconsider its decision on fairness grounds.  The court subsequently entered a judgment dismissing all claims in the amended complaint against the

---

[7] The district court explained that under federal case law, intervening developments in the law rarely constitute extraordinary circumstances justifying relief from a judgment.  *See Agostini v. Felton*, 521 U.S. 203, 239 (1997).

11

County and the Town, but permitting the certiorari claim against the board of adjustment to proceed.

¶26    Eagle Cove appeals the dismissal of its claims against the County and the Town, as well as the dismissal of its non-certiorari claims against the Oneida County Board of Adjustment, arguing that the circuit court improperly gave the federal court proceedings preclusive effect.[8]  Eagle Cove also argues that because the disposition of one of its RLUIPA claims in the federal action was based on the federal court's "admitted error" regarding the proper legal standard, the circuit court here erroneously denied its "Renewed Motion for Reconsideration" seeking to avoid preclusion on that claim.   The Town cross-appeals the circuit court's denial of its motion for sanctions against Eagle Cove.

## DISCUSSION

I.    *The circuit court properly applied claim preclusion to bar all but Eagle Cove's certiorari claim against the Oneida County Board of Adjustment.*

¶27    This case requires us to determine whether the circuit court properly gave the federal judgment preclusive effect.  Because the federal district court was located in Wisconsin and exercising federal question jurisdiction, there is no dispute that the Wisconsin law of claim preclusion applies to this case.  *Cf. Wisconsin Pub. Serv. Corp. v. Arby Constr., Inc.*, 2012 WI 87, ¶30, 342 Wis. 2d 544, 818 N.W.2d 863.  Whether claim preclusion applies to a given factual

---

[8] By order, we noted we have jurisdiction only to review the dismissal of the claims against the County and the Town, as the certiorari claim remains to be litigated against the board of adjustment and therefore the order is not final as to that party.

12

scenario is a question of law that we review de novo. *Teske v. Wilson Mut. Ins. Co.*, 2019 WI 62, ¶20, 387 Wis. 2d 213, 928 N.W.2d 555.

¶28 "The doctrine of claim preclusion provides that a final judgment on the merits bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences." *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212, 233, 601 N.W.2d 627 (1999). In other words, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." *Teske*, 387 Wis. 2d 213, ¶23 (quoting *Lindas v. Cady*, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994)). The doctrine exists to distinguish between meritorious claims and those that are merely vexatious or repetitious. Once a litigant has had his or her day in court, the litigant may not indulge in the chaos of endless litigation, wastefully expending scarce judicial resources in an attempt to produce inconsistent decisions. *See id.*, ¶24.

### A. All elements of claim preclusion are present.

¶29 Claim preclusion has three elements: (1) an identity between the parties or their privies in the prior and present suits; (2) a final judgment on the merits by a court of competent jurisdiction in the prior action; and (3) an identity of the causes of action in the two suits. *Kruckenberg v. Harvey*, 2005 WI 43, ¶21, 279 Wis. 2d 520, 694 N.W.2d 879. "In effect, the doctrine of claim preclusion determines whether matters undecided in a prior lawsuit fall within the bounds of that prior judgment." *Id.*, ¶22. The party asserting claim preclusion bears the burden of proof on each of these elements. *Pasko v. City of Milwaukee*, 2002 WI 33, ¶16, 252 Wis. 2d 1, 643 N.W.2d 72.

*i. There is an identity of parties between the two actions.*

¶30   There is no dispute that the parties are the same in both this action and the prior federal action.  Eagle Cove Camp & Conference Center, Inc., and Arthur, Wesley, and Randall Jaros (in their capacity as trustees of various trusts) were plaintiffs in the federal suit, just as they are here.  The defendants here—Oneida County, the Town of Woodboro, and the Oneida County Board of Adjustment—were named defendants in the federal suit.  The requirement that there be an identity of parties has therefore been satisfied.

*ii. The federal action resulted in a final judgment.*

¶31   The second element of claim preclusion is a final judgment on the merits by a court of competent jurisdiction in the prior action.  ***Kruckenberg***, 279 Wis. 2d 520, ¶21.  Citing various sections of the RESTATEMENT (SECOND) OF JUDGMENTS (AM. LAW. INST. 1982), Eagle Cove attacks the circuit court's determination on this element in two ways.  First, Eagle Cove contends claim preclusion is inapplicable because the federal district court did not dispose of the entire case.  Second, Eagle Cove argues that its federal and state actions are all part of a single case, such that claim preclusion is inapplicable.  We reject both arguments.

¶32   Eagle Cove misapprehends the Restatement in asserting that the federal district court did not dispose of the entire case.  This argument rests on RESTATEMENT (SECOND) OF JUDGMENTS § 20(1)(b) and a comment to that section—neither of which has been adopted in Wisconsin.  Section 20(1)(b) states, as relevant here, that a personal judgment for the defendant, although valid and

14

final,[9] does not bar another action by the plaintiff on the same claim "[w]hen … the court directs that the plaintiff be nonsuited (or that the action be otherwise dismissed) without prejudice."  Comment e. to § 20 concerns situations in which a dismissal is based on two or more "alternative" determinations, one of which "would not render the judgment a bar to another action on the same claim."

¶33    RESTATEMENT (SECOND) OF JUDGMENTS § 20(1)(b) and comment e. are plainly inapplicable to the procedure that occurred in this case.  Only Eagle Cove's certiorari claim in the prior action was dismissed without prejudice, and there is no dispute that claim survives so as to be litigated in this state action.  For the remaining claims adjudicated in the federal district court—including Eagle Cove's claim under the Wisconsin Constitution—§ 20(1)(b) does not aid Eagle Cove because those claims were dismissed with prejudice.  Comment e. is similarly unavailing because the district court did not use "alternative determinations" when dismissing those claims.  Each of the claims was dismissed

---

[9] Because RESTATEMENT (SECOND) OF JUDGMENTS § 20(1)(b) presupposes the existence of a prior valid and final judgment, it would be proper to frame it as an exception to the rule of claim preclusion rather than as a matter analyzing whether a prior judgment in fact existed. Nonetheless, we will follow Eagle Cove's framing of the issue and address it here.

on summary judgment because the court determined the established facts did not give rise to a valid claim for relief.[10]

¶34 We also reject Eagle Cove's contention that its federal and state actions are one "case" so as to make claim preclusion inapplicable. As authority for this proposition, Eagle Cove cites primarily to *Montano v. City of Chicago*, 375 F.3d 593 (7th Cir. 2004), in which the federal district court elected to keep jurisdiction of the plaintiff's federal claims but severed and dismissed without prejudice the plaintiff's state law claims. *Id.* at 594. After the plaintiffs filed their dismissed claims in state court, the district court held a trial on the federal claims, during which it dismissed all but two of the claims on their merits and ordered a retrial on the remaining two federal counts. *Id.* at 596. The district court then entered an order staying the federal litigation pending the resolution of the state court action, later entering a further order dismissing what remained of the federal case without prejudice. *Id.*

¶35 Precisely how Eagle Cove believes *Montano* benefits it is unclear. The Seventh Circuit Court of Appeals called the procedure in that case a "mess" and described its efforts to "put this Humpty Dumpty-like case back together

---

[10] Eagle Cove attacks the federal courts' determinations for failing to specifically address one of their religious liberty arguments—namely, the prohibition under the Wisconsin Constitution of giving preference under the law to any religious establishments or modes of worship. *See Milwaukee Cty. v. Carter*, 258 Wis. 139, 142, 45 N.W.2d 90 (1950). Eagle Cove also asserts the federal courts "gave only perfunctory, erroneous treatment" to their religious exercise claim under Wisconsin law. Even if both assertions are true, the appropriate avenue for relief is not the filing of a second action in state court asserting the same claims. For the reasons stated herein, the district court's judgment was final and, as such, was appealable within the federal court system. Indeed, the case has twice been litigated through the federal courts to the point of Eagle Cove petitioning the United States Supreme Court for a writ of certiorari. We perceive no basis upon which Eagle Cove should be permitted to raise new claims in this state action based upon any perceived omissions or "perfunctory" treatment in the federal courts' analysis of Eagle Cove's claims.

again." *Id.* at 595. The Seventh Circuit first considered whether it had jurisdiction to review any of the orders in the case, ultimately concluding that it could exercise rarely used pendent appellate jurisdiction to review the order dismissing the plaintiff's state law claims. *Id.* at 599-600. The doctrine "allows a court of appeals to review an otherwise unappealable interlocutory order if it is inextricably intertwined with an appealable one." *Jones v. InfoCure Corp.*, 310 F.3d 529, 536 (7th Cir. 2002). In this context, the Seventh Circuit noted in *Montano* that pendent appellate jurisdiction was appropriate in part because the plaintiffs had presented "only one constitutional 'case' … even though [they] have a number of theories supporting their claim." *Montano*, 375 F.3d at 600.

¶36 Contrary to Eagle Cove's argument, the "single case" consideration appears to apply solely to the issue of the Seventh Circuit's appellate jurisdiction and the intertwinement of the district court's orders dismissing without prejudice the state and remaining federal claims. We do not read *Montano* to say that claim preclusion cannot apply under the materially different circumstances present in this case, where a federal court has dismissed all but a state law certiorari claim on the merits and with prejudice. Indeed, in addressing whether there was a final appealable order, the *Montano* court remarked that the judgment in the parallel state court proceedings might have a preclusive effect on the dismissed federal law claims. *Id.* at 597, 599. The fact that the state and federal causes of action in *Montano* were viewed as part of "one case" for purposes of pendant appellate jurisdiction does not establish that Eagle Cove can now bring any claims it wants regardless of its prior opportunity and efforts to litigate claims arising from the same transaction.

### iii. The two causes of action share an identity.

¶37 For purposes of determining whether there is an identity of causes of action between two lawsuits, Wisconsin has adopted the "transactional approach" set forth in RESTATEMENT (SECOND) OF JUDGMENTS § 24. *Teske*, 387 Wis. 2d 213, ¶31. Under this approach, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action and are required to be litigated together. *Id.* (citing *A.B.C.G. Enters., Inc. v. First Bank Se., N.A.*, 184 Wis. 2d 465, 480-81, 515 N.W.2d 904 (1994)). "The transactional approach 'reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so.'" *Id.* (quoting *Kruckenberg*, 279 Wis. 2d 520, ¶27).

¶38 In applying the transactional approach, we endeavor "to see a claim in factual terms and to make a claim coterminous with the transaction, regardless of the claimant's substantive theories or forms of relief, regardless of the primary rights invaded, and regardless of the evidence needed to support the theories or rights." *Kruckenberg*, 279 Wis. 2d 520, ¶26. Claim preclusion may lie even though the legal theories advanced, remedies sought, and evidence used may be different between the first and second actions. *Id.* A "transaction" consists of a common nucleus of operative facts. *Id.* We determine what constitutes the transaction pragmatically, considering whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations. *Id.*, ¶25.

¶39 This is not one of those cases where determining what factual grouping constitutes a "transaction" is a difficult task. *See id.* It is apparent that both Eagle Cove's federal claims and its state claims arise from the same cluster of

facts relating to the County's and its board of adjustment's refusal to allow the development of the subject property for use as a year-round Bible camp. Even if some of the legal theories Eagle Cove advances in this action to justify the relief it seeks may be different from those it advanced in the federal action, all plainly arise from that common nucleus of operative facts.

¶40 Even aside from the identical factual nexus for all of Eagle Cove's causes of action, many of the claims Eagle Cove raises in this action were actually raised in the federal action. In federal court, Eagle Cove alleged various violations of federal law—namely, RLUIPA and the First Amendment—that were unique to that action. Eagle Cove emphasizes that the Wisconsin Constitution offers more expansive protections for freedom of conscience than those offered by the First Amendment, and that we are not limited to current First Amendment jurisprudence when interpreting our own constitutional protections for religious liberty. *See Coulee Catholic Sch. v. LIRC*, 2009 WI 88, ¶60, 320 Wis. 2d 275, 768 N.W.2d 868. Based upon this principle, Eagle Cove believes its claims under the Wisconsin Constitution in this action survive.

¶41 The problem with Eagle Cove's attempt to avoid claim preclusion is that in the federal action, in addition to its federal claims, Eagle Cove asserted that the refusal to allow its year-round Bible camp violated WIS. CONST. art. I, § 18 "by interfering with the Plaintiffs' rights of conscience, and by preferring other religious establishments and modes of worship." In this action, Eagle Cove's amended state court complaint asserts that the County, its board of adjustment, and the Town each violated WIS. CONST. art. I, § 18 by excluding the proposed Bible camp from zoned areas within the County and Town, by preferring other types of

19

religious institutions or modes of worship, and by violating its right of conscience.[11] The Wisconsin religious liberty claims therefore appear merely to be slightly more specific variations of the general claim raised in the federal action. To the extent any of these state claims espouse new legal theories not advanced in the federal litigation, those claims nonetheless arise out of the same factual grouping as the federal claims and are therefore barred.

¶42 Eagle Cove also has attempted to advance equal protection challenges in both actions. In federal court, Eagle Cove alleged that the refusal to allow it to develop a year-round Bible camp violated the Fourteenth Amendment's Equal Protection Clause. The district court, observing that there was a substantial overlap between the equal protection claim and various alleged violations of RLUIPA, rejected the equal protection claim on its merits and dismissed it with prejudice after concluding that the zoning determinations easily satisfied rational basis review. In this action, Eagle Cove raises equal protection challenges under the Wisconsin Constitution. But equal protection under the state constitution is generally defined in the same manner as equal protection under the federal constitution, and Eagle Cove provides us with no basis for distinguishing its Wisconsin equal protection claims from the federal claim that has already been resolved. *See* ***Milwaukee Cty. v. Mary F.-R.***, 2013 WI 92, ¶10, 351 Wis. 2d 273, 839 N.W.2d 581.

¶43 Only one claim appears to be truly unique to the Wisconsin action, and that is a procedural due process claim ostensibly advanced under WIS. CONST.

---

[11] The state court amended complaint also asserts due process violations that, while unique to the state court action, are largely derivative of the religious liberty claims Eagle Cove advances under WIS. CONST. art. I, § 18.

art. I, § 18.[12]  Eagle Cove explains that this claim is based upon the statements officials made, when rejecting the rezoning application, to the effect that most of Eagle Cove's stated objectives could be achieved through a CUP.  Eagle Cove believes it was denied procedural due process when the board of adjustment "rejected the [CUP] application, contrary to [the board's] prior statements."  This procedural objection thus arises out of the common nucleus of facts that formed the basis for Eagle Cove's claims in the federal action and is therefore also barred.[13]

¶44  Eagle Cove also advanced a claim in the federal action for certiorari review of the board's denial under WIS. STAT. § 59.694(10), just as it does in this action.  "Certiorari is an extraordinary remedy by which courts exercise supervisory control over inferior tribunals, quasi-judicial bodies and officers." *Acevedo v. City of Kenosha*, 2011 WI App 10, ¶8, 331 Wis. 2d 218, 793 N.W.2d 500 (2010).  On certiorari review, judicial inquiry is limited to four topics: (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable; and (4) whether the evidence was such that it might reasonably make the order or determination in question.  *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶41, 362 Wis. 2d 290, 865 N.W.2d 162.  The municipality or agency is afforded a "presumption of

_____

[12] Contrary to what Eagle Cove's amended complaint suggests, procedural due process is rooted in article I, § 1 of the Wisconsin Constitution, not article I, § 18.  *See State v. Wood*, 2010 WI 17, ¶17, 323 Wis. 2d 321, 780 N.W.2d 63.

[13] Indeed, the federal complaint included roughly five pages of factual allegations detailing the actions and statements of members of the Oneida County Zoning and Planning Committee and various other County officials in denying the rezoning petition.

'correctness and validity'" to its determination. *Lamar Cent. Outdoor, Inc. v. Board of Zoning Appeals*, 2005 WI 117, ¶16, 284 Wis. 2d 1, 700 N.W.2d 87 (citation omitted).

¶45 The circuit court properly allowed Eagle Cove's certiorari claim to proceed pursuant to *Hanlon v. Town of Milton*, 2000 WI 61, 235 Wis. 2d 597, 612 N.W.2d 44. Yet, Eagle Cove argues that the circuit court misinterpreted *Hanlon*, apparently under the belief that *Hanlon* affords "more generous treatment of … certiorari plaintiffs" than what the circuit court contemplated. Considered together with Eagle Cove's assertion of various exceptions to the doctrine of claim preclusion (which we will soon address), we understand Eagle Cove to be arguing that *Hanlon* endorses a view that would permit its new state court claims to proceed alongside its yet-to-be-litigated claim for certiorari review. We disagree with Eagle Cove on this point given the procedural posture of this case and the prior federal action.

¶46 In *Hanlon*, the plaintiff sought certiorari review of a CUP denial in state court. *Id.*, ¶¶5, 8. After those efforts to overturn the denial proved unsuccessful, Hanlon filed an action in federal district court under 42 U.S.C. § 1983, seeking a money judgment based upon allegations that the defendants deprived him of his rights to due process and equal protection of the law by denying the CUP application. *Id.*, ¶11. The federal case was dismissed on summary judgment, as the municipality argued that Hanlon's failure to assert the § 1983 claim within the certiorari proceeding, or to join that claim with the certiorari claim arising from the same transaction, resulted in claim preclusion. *Id.*, ¶¶11-12.

¶47    The Seventh Circuit Court of Appeals certified the following question of law to the Wisconsin Supreme Court:

> Whether a litigant challenging an administrative determination according to the [certiorari] provisions set forth in [WIS. STAT.] Chapter 68 may bring an equal protection claim and whether the reviewing Wisconsin court may consider the merits of such a claim under this chapter when the claim arises from the same transaction forming the basis for the administrative determination so that the failure to raise such a claim invokes the doctrine of claim preclusion.

*Id.*, ¶1.

¶48    Our supreme court first concluded that although a litigant may raise constitutional objections to municipal determinations in a certiorari proceeding, that forum is not appropriate to advance a claim for money damages under 42 U.S.C. § 1983. *Hanlon*, 235 Wis. 2d 597, ¶13. Second, the court observed that certiorari proceedings "are distinct from civil actions, which are filed to resolve a controversy between the parties." *Id.*, ¶22. The court pointed out the limited scope of certiorari review, finding it incompatible with the process of litigating a civil claim. *Id.*, ¶¶24-26. Although Hanlon could have joined his § 1983 claim with his certiorari claim, the court determined that he was not required to do so because making joinder mandatory would "unduly complicate the procedure established by the legislature to provide for an orderly review of a municipality's determinations." *Id.*, ¶26.

¶49    *Hanlon* shows that the circuit court used the correct procedure here in dismissing the civil claims Eagle Cove brought in state court alongside its certiorari claim. Given *Hanlon*'s holding that a litigant is not required to join additional civil claims with a certiorari claim arising from the same transaction, Eagle Cove would not have been precluded from pursuing the present claims had

23

it sought only the remedy available by certiorari in the prior federal action. But, having joined additional civil claims with its request for certiorari review in federal court, and having received a determination on the merits of those civil claims, the ordinary principles of claim preclusion apply. Eagle Cove cannot use the limited *Hanlon* exception to gain new opportunities to litigate additional claims that could have been brought in the prior action.[14]

>    B. *The exceptions to claim preclusion argued by Eagle Cove are inapplicable.*

¶50    Eagle Cove proposes that a number of exceptions to claim preclusion contained in the RESTATEMENT (SECOND) OF JUDGMENTS apply to allow its non-certiorari state claims to survive. Eagle Cove first relies on comment e. to RESTATEMENT (SECOND) OF JUDGMENTS § 25. Under § 25, claim preclusion extinguishes a claim even though a plaintiff in the second action endeavors to present evidence, grounds or theories of the case not presented in the first action, or seeks remedies or forms of relief not demanded in the first action.[15] Comment e. illustrates how these general rules apply to separate state and federal theories of recovery:

---

[14] Eagle Cove appears to fault the circuit court for having used the phrase "two different claims," asserting that this phrasing is incompatible with the transactional view that focuses on the factual grouping. However, the various holdings in *Hanlon v. Town of Milton*, 2000 WI 61, 235 Wis. 2d 597, 612 N.W.2d 44, are predicated upon the assumption that both the certiorari claim and the additional civil claims the plaintiff later desires to bring are rooted in the same facts and would be otherwise barred. *Hanlon* merely carves out a narrow exception to the traditional rule of claim preclusion given the limited scope of certiorari review—an exception that is, as the circuit court recognized, focused on the nature of the claim as arising in certiorari.

[15] RESTATEMENT (SECOND) OF JUDGMENTS § 25 therefore mirrors Wisconsin law regarding the scope of the preclusive effect. *See Kruckenberg v. Harvey*, 2005 WI 43, ¶26, 279 Wis. 2d 520, 694 N.W.2d 879.

> A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground.

RESTATEMENT (SECOND) OF JUDGMENTS § 25, cmt. e. In essence, comment e. contains a cogent summary of our foregoing explanation of how the general rules of claim preclusion apply to claims grounded in both state and federal law.

¶51 Comment e. also contains an exception to these general rules, on which Eagle Cove relies:

> If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.

*Id.* Jurisdiction is not the issue; Eagle Cove recognizes that the district court would have had supplemental jurisdiction to consider all of the claims it attempts to raise in this state action. Rather, Eagle Cove argues that the district court would clearly have declined to exercise supplemental jurisdiction over the "new" claims presented here.

¶52 Comment e. to RESTATEMENT (SECOND) OF JUDGMENTS § 25 has been adopted as the rule in Wisconsin. *See Parks v. City of Madison*, 171 Wis. 2d 730, 735-38, 492 N.W.2d 365 (Ct. App. 1992). Federal courts have long recognized that a determination on the merits of a federal claim in their forum may have a preclusive effect on all other claims (including state claims) arising out of the same transaction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

25

725 (1966).  Thus, *Parks* observed that federal courts "consistently have held that when a federal claim is dismissed on a motion for summary judgment, the exercise of sound discretion requires dismissal of the state claims as well, without prejudice to the plaintiff's right to litigate them in the proper state forum."  *Parks*, 171 Wis. 2d at 737; *see also* *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 458 (7th Cir. 1982) ("The rule in pendent jurisdiction is that if the federal claim to which the state-law claim is pendent is dismissed before trial, the court will decline jurisdiction over the state-law claim and remit the claimant to the state courts.").

¶53     Here, the district court acknowledged that it was departing from this "usual practice" in retaining supplemental jurisdiction over Eagle Cove's claim under WIS. CONST. art. I, § 18.  A district court is permitted to retain such jurisdiction if the state law claim is clearly without merit, the justification being that resolving the claim in federal court "spares overburdened state courts additional work that they do not want or need."  *In re Repository Techs., Inc.*, 601 F.3d 710, 725 (7th Cir. 2010).  The district court stated it was retaining supplemental jurisdiction because Eagle Cove's claim under the Wisconsin Constitution was "'doomed' for all the same reasons as its federal constitutional equivalent," and considerations of judicial economy warranted simply disposing of the claim.  Notably, the dismissal was partially due to Eagle Cove's own failures in adequately distinguishing that cause of action, as the district court noted Eagle Cove had offered "no plausible argument that the protections offered Wisconsin

citizens under Article I, § 18, are in any way greater than its federal counterpart, much less RLUIPA's additional protections."[16]

¶54    Given this background, it is astounding that Eagle Cove now argues the district court "would clearly have declined to exercise" supplemental jurisdiction over the religious liberty and other various claims it advances here. The district court took pains to acknowledge the usual federal practice and explain its departure from that procedure.  It found Eagle Cove's religious liberty claim under the Wisconsin Constitution so lacking in merit that it was more efficient for the court simply to decide it than to allow it to be further litigated.  On the other hand, the district court recognized the "restrictive standard imposed for certiorari review of a municipal body's determination," and it concluded that claim was "sufficiently unique to state law" such that it would dismiss it without prejudice. The notion that the district court would have applied these considerations to non-certiorari claims that largely mirrored claims the court had already found meritless is untenable.  The circuit court here properly concluded it was not clear the district court would have declined to exercise jurisdiction over the state law claims.

¶55    Eagle Cove also asserts that three exceptions under RESTATEMENT (SECOND) OF JUDGMENTS § 26 are applicable.  The first is § 26(1)(b), which states that claim preclusion does not apply when "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action."  For reasons

---

[16] Had Eagle Cove argued in the federal forum that Wisconsin law uniquely supported its WIS. CONST. art. I, § 18 claim, as it does now in this appeal, the district court's reasoning suggests it might well have dismissed that claim without prejudice.  Nonetheless, Eagle Cove's arguable failure to properly litigate its claim in the prior action is not a compelling reason to avoid the application of preclusion doctrines, and Eagle Cove does not argue as much.

similar to those we addressed above regarding RESTATEMENT (SECOND) OF JUDGMENTS § 20(1)(b), we conclude § 26(1)(b) is inapplicable. *See supra* ¶¶32-33. At best for Eagle Cove, the federal district court judgment can be construed as reserving only Eagle Cove's right to maintain a second action on its dismissed certiorari claim, not on all claims that were, or could have been, litigated in the federal action. Further, Eagle Cove points to no language in any of the federal court decisions expressly authorizing it to assert claims in the second action that could have been raised in the prior action.

¶56 Next, Eagle Cove relies on RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(d). Under § 26(1)(d), a plaintiff is not precluded from bringing a second action if, as relevant here, "[t]he judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme." Eagle Cove views the federal judgment as inconsistent with the Wisconsin constitutional protections for religious liberty, and it accuses the federal courts of omitting discussion of, or insufficiently analyzing, certain aspects of its claim under article I, § 18 of the Wisconsin Constitution.[17]

¶57 Nothing Eagle Cove has presented persuades us that RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(d) applies here in any fashion. Again, to the

---

[17] Eagle Cove's citations to authority for this argument are baffling. Neither of the Wisconsin cases it cites dealt with issues concerning claim preclusion or the scope of RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(d). In *Milwaukee Metropolitan Sewerage District v. DNR*, 122 Wis. 2d 330, 362 N.W.2d 158 (Ct. App. 1984), *aff'd*, 126 Wis. 2d 63, 375 N.W.2d 648 (1985), the dispositive issue was whether an administrative review statute created an independent right to a contested case hearing. *Geinsenfeld v. Village of Shorewood*, 232 Wis. 410, 287 N.W. 683 (1939), involved the reasonableness of a local zoning determination classifying the plaintiff's property as residential. Further, we agree with Oneida County's criticism that "[t]he task of determining what Eagle Cove references in any of its citations to case law is made more difficult, of course, by its counsel's failure to utilize pinpoint citations."

extent the federal courts failed to consider unique aspects of Wisconsin constitutional protections for religious liberty, that failure appears to have been caused by Eagle Cove not sufficiently advancing any distinguishing argument.[18] As noted above, when retaining supplemental jurisdiction over Eagle Cove's state law constitutional claim, the district court expressly recognized that Eagle Cove had failed to present any basis for distinguishing that claim from the arguments it had advanced in support of its federal claims. If Eagle Cove failed to raise with sufficient prominence a meritorious issue regarding Wisconsin's unique protections for religious liberty, it can hardly be said that the federal judgment unfairly or inequitably applied Wisconsin constitutional law.

¶58 Moreover, even assuming the federal courts were in some fashion wrong in their determination regarding Eagle Cove's claim under WIS. CONST. art. I, § 18, Eagle Cove has provided no authority for the proposition that this error alone justifies a second action under RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(d). Certainly one component of a "fair and equitable" constitutional scheme is the ability of a litigant to seek relief based upon a violation of substantive legal principles, and Eagle Cove was provided an opportunity to litigate its religious liberty claim during the initial federal litigation. Federal court rules provide the opportunity to address errors in a judgment through motions for

---

[18] To the extent Eagle Cove accuses the defendants of "sandbagging" in the federal litigation by not sufficiently arguing that its summary judgment motion was based on a lack of evidence as opposed to defenses or other matters, we are unpersuaded this approach demonstrates that the district court's determination was plainly inconsistent with the fair and equitable application of Wisconsin's protection of religious liberties. A motion for summary judgment puts the plaintiff on notice that he or she must produce sufficient evidence to support a determination in his or her favor on the merits of the claim. Eagle Cove acknowledges that the defendants alleged in the federal action that Eagle Cove had "fail[ed] to show sufficient burden under Article I, § 18's freedom of conscience clause."

relief or appeals, avenues that Eagle Cove has repeatedly pursued.[19]  Absent citation to authority showing that an incorrect federal determination on state law grounds provides the basis for a subsequent state action under RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(d), we reject Eagle Cove's reliance on that exception to claim preclusion.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (noting we typically do not address undeveloped arguments or arguments unsupported by citations to applicable legal authority).

¶59    Eagle Cove also asserts that the exception under RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(f) is applicable.  Under that paragraph, claim preclusion does not apply if

> it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

*Id.*  For example, in *Sopha*, our supreme court applied this exception to permit an insulation worker to maintain a second action based upon a mesothelioma diagnosis despite his having unsuccessfully brought a prior lawsuit a decade earlier based on nonmalignant injuries.  *Sopha*, 230 Wis. 2d at 237-38.  The court has also applied § 26(1)(f) to allow a second action to determine the location of a property boundary line where that issue was not explicitly determined by the prior action.  *Kruckenberg*, 279 Wis. 2d 520, ¶41.

---

[19] Eagle Cove admits that the Seventh Circuit Court of Appeals "corrected" an error in the district court's analysis, but it argues the appeals court then went on to commit additional errors in its application of constitutional principles to the facts of the case.  Even if the Seventh Circuit erred in some way, the remedy is not to bring a new action in state court in an effort to obtain an inconsistent disposition.

¶60 These are narrow exceptions, however, and since *Kruckenberg* no reported Wisconsin case has articulated any further "special circumstances" that permit a litigant to avoid claim preclusion. Nonetheless, Eagle Cove argues two "extraordinary reasons" warrant allowing its civil claims to proceed: (1) an "incoherent disposition" in federal court because the courts did not consider one aspect of Eagle Cove's religious liberty claim under the Wisconsin Constitution; and (2) the district court's decision to dismiss Eagle Cove's certiorari claim without prejudice. These reasons are merely duplicative of arguments that we have already rejected and are without merit. We perceive no basis for relief from the preclusive effect of the earlier action under RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(f).[20]

¶61 Lastly, Eagle Cove vaguely asserts that applying claim preclusion in this instance deprives it of its due process and equal protection rights. The contours of this argument are difficult to comprehend. It appears Eagle Cove believes it suffered "disparate treatment" because of the change in the applicable RLUIPA standard recognized by *Schlemm*. Essentially, Eagle Cove appears to reason that it has been treated differently than a hypothetical litigant whose certiorari claim had been tried in federal court, because under those circumstances, the Federal Rules of Civil Procedure would have provided a mechanism to reopen the judgment on the dismissed claims. Eagle Cove suggests that this court has the

---

[20] We observe that RESTATEMENT (SECOND) OF JUDGMENTS § 26 requires, as a basis for proceeding with a second action under subsec. (1)(f), that the plaintiff follow the procedure set forth in §§ 78-82, including by filing a motion for relief in the court that rendered the first judgment. It does not appear any Wisconsin case applying § 26(1)(f) has discussed these procedural requirements.

authority to fashion a remedy for this perceived discrimination under WIS. CONST. art. I, § 9.

¶62 We agree with the County that these "hypotheticals and vague invocations of due process, equal protection, and equity" are not developed legal arguments that require resolution. As an initial matter, the proposition that a litigant can avoid preclusion doctrines because of an intervening change in the law seems untenable on its face, as no litigation would truly be final. But ultimately, Eagle Cove's arguments contain scant citations to applicable legal authority, and Eagle Cove does not even attempt to apply controlling due process or equal protection case law to the facts here.[21] We decline to review arguments that consist only of general statements and that lack citation to legal authority. *See Pettit*, 171 Wis. 2d at 646.

II. *The circuit court properly denied Eagle Cove's "Renewed Motion for Reconsideration."*

¶63 Eagle Cove also argues that the circuit court erroneously denied its "Renewed Motion for Reconsideration," which asserted that claim preclusion should not apply given the Seventh Circuit Court of Appeals' decision in *Schlemm*. Eagle Cove argues the circuit court erred because relief from the

---

[21] As just one example, nowhere does Eagle Cove discuss the applicable level of scrutiny or its burden of proof. *See Mayo v. Wisconsin Injured Patients & Families Comp. Fund*, 2018 WI 78, ¶¶28-29, 383 Wis. 2d 1, 914 N.W.2d 678.

court's earlier decision applying claim preclusion was warranted pursuant to WIS. STAT. § 806.07(1)(g) and (h).[22] We disagree.

¶64 We review a circuit court's decision denying relief under WIS. STAT. § 806.07 for an erroneous exercise of discretion. ***Thoma v. Village of Slinger***, 2018 WI 45, ¶11, 381 Wis. 2d 311, 912 N.W.2d 56. A circuit court's exercise of discretion will be upheld if it based its decision on the pertinent facts in the record, applied the correct legal standard, and reached a reasonable determination. ***Id.***

¶65 Eagle Cove first invokes WIS. STAT. § 806.07(1)(g). Under that provision, relief is warranted when "[i]t is no longer equitable that the judgment should have prospective application." Wisconsin law is clear that § 806.07(1)(g) applies only in equitable actions, ***State v. Henley***, 2010 WI 97, ¶69, 328 Wis. 2d 544, 787 N.W.2d 350, and this is not such an action—Eagle Cove sought only various forms of declaratory relief on the dismissed claims.

¶66 Furthermore, the federal and state rules dealing with relief from judgments are analogous. ***DOC v. Kliesmet***, 211 Wis. 2d 254, 260, 564 N.W.2d 742 (1997). The federal equivalent to WIS. STAT. § 806.07(1)(g) is FED. R. CIV. P. 60(b)(5). "Like the traditional equity rule on which it is based, Rule 60(b)(5) applies only to judgments that have prospective effect 'as contrasted with those

---

[22] As the County observes, Eagle Cove's motion for relief from the judgment was premature, as the circuit court's decision had not been reduced to a judgment at the time of the motion. The result of this appeal is the same regardless of whether one views the motion as one for reconsideration or, as Eagle Cove argues, as one for relief from a judgment under WIS. STAT. § 806.07. To prevail on a motion for reconsideration, the movant must either present newly discovered evidence or establish a manifest error of law or fact. ***Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.***, 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853. Eagle Cove has not argued these points and, given the foregoing discussion, we conclude Eagle Cove could not satisfy either standard.

that offer a present remedy for a past wrong.'" *Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980) (citation omitted); *accord Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074, 1077 (7th Cir. 1997) (holding that although Rule 60(b)(5) permits the revision of an ongoing decree, it does not provide an avenue for upsetting the disposition of a claim for a money judgment merely because the law on which the judgment was founded has changed). The judgment in this action did not have any prospective effect; it merely disposed of Eagle Cove's declaratory judgment claims for alleged violations of the Wisconsin Constitution.

¶67 Next, Eagle Cove suggests that relief was warranted under WIS. STAT. § 806.07(1)(h), which is a "catch-all" provision that permits courts to reopen a judgment for any other reason justifying relief. The federal analog to § 806.07(1)(h) is FED. R. CIV. P. 60(b)(6), but neither the state nor federal system permits a litigant to obtain relief under these provisions based upon a subsequent change in the law. *See Shah v. Holder*, 736 F.3d 1125, 1127 (7th Cir. 2013) ("District courts cannot use Rule 60(b)(6) to apply new decisions retroactively to closed civil cases."); *Allstate Ins. Co. v. Brunswick Corp.*, 2007 WI App 221, ¶7, 305 Wis. 2d 400, 740 N.W.2d 888 (noting the general rule that a change in the law is not an extraordinary circumstance justifying relief from a final judgment); *Kovalic v. DEC Int'l*, 186 Wis. 2d 162, 165, 519 N.W.2d 351 (Ct. App. 1994) (rejecting a rule permitting an unsuccessful litigant to reopen a judgment based on new law because such a rule "would destroy the finality of many judgments").

¶68 In a technical sense, Eagle Cove is not directly attacking the federal court judgment; it is seeking relief from the preclusive effect of that judgment based on a change in the way the federal courts dealt with one of its claims. The federal courts, though, have already rejected Eagle Cove's attempts to

retroactively apply the new case law, *see generally **Eagle Cove II***, 674 F. App'x 566, and Eagle Cove's efforts to obtain relief from the judgment here effectively constitute a collateral attack on those determinations. We disfavor such collateral challenges because they disrupt the finality of other judgments and thereby tend to undermine confidence in the integrity of our procedures, as well as cause delay and impair the orderly administration of justice. ***State v. Gudgeon***, 2006 WI App 143, ¶6, 295 Wis. 2d 189, 720 N.W.2d 114. The circuit court did not erroneously exercise its discretion in determining that these principles militated against granting relief from the court's January 23, 2015 decision.

III.    *Sanctions were warranted against Eagle Cove for prosecuting a frivolous action against the Town.*

¶69    The Town cross-appeals the denial of its motion for sanctions. In its initial pleading, Eagle Cove sought only certiorari review, and therefore named only the Oneida County Board of Adjustment as a defendant. The Town was brought into this action when Eagle Cove filed its amended complaint, which included the additional fifteen, now-dismissed counts. The Town argues it is entitled to its actual costs incurred in defending the action pursuant to WIS. STAT. § 895.044, a relatively new statute which it appears no reported Wisconsin case has yet applied. Whether an attorney made a frivolous claim presents a mixed question of fact and law, under which we review the circuit court's findings of the historical facts using the clearly erroneous standard, but we independently decide the ultimate question of frivolousness. ***Elmakias v. Wayda***, 228 Wis. 2d 312, 319, 596 N.W.2d 869 (Ct. App. 1999).

¶70    WISCONSIN STAT. § 895.044 was adopted in 2011. *See* 2011 Wis. Act 2, § 28. It provides, as relevant here, that a party or a party's attorney in most civil actions "may be liable for costs and fees under this section for commencing,

using, or continuing an action … or appeal" if the party or the party's attorney "knew, or should have known, that the action … or appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law." Sec. 895.044(1)(b). If a court concludes, based on clear and convincing evidence, that the action has been frivolously commenced or continued—and if no correction or withdrawal of the frivolous filing has occurred after at least 21 days have elapsed since the service of the motion for sanctions—the court "shall" award as damages to the party making the motion "the actual costs incurred by the party as a result of the action … including the actual reasonable attorney fees the party incurred …." Sec. 895.044(2)(b).

¶71    The adoption of WIS. STAT. § 895.044 appears to have been a legislative response to the supreme court's recognition that a circuit court was not required to impose sanctions for frivolous filings. The previous (and still existing) manner for obtaining relief from frivolous filings was WIS. STAT. § 802.05. Section 802.05(2)(b) states that by signing a paper, an attorney or unrepresented litigant is representing to the court that the claims and legal contentions therein are "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." If, upon a motion for sanctions or on its own initiative, the circuit court concludes this provision has been violated, the court "may impose an appropriate sanction," but only to the extent necessary to deter repetition of the conduct or comparable conduct by others similarly situated. Sec. 802.05(3)(a), (3)(b). The sanction may consist of nonmonetary measures, an order to pay a penalty, or, if the aggrieved party so moves, an award of some or all of the party's reasonable attorney fees and expenses incurred as a direct result of the violation. Sec. 802.05(3)(b).

¶72 Our supreme court has recognized that, under WIS. STAT. § 802.05, sanctions are not mandatory upon a circuit court's finding of frivolousness. *See Trinity Petroleum, Inc. v. Scott Oil Co.*, 2007 WI 88, ¶28, 302 Wis. 2d 299, 735 N.W.2d 1. In contrast, WIS. STAT. § 895.044(2)(b) appears, by its plain language, to remove the circuit court's discretion not to sanction a party for frivolous filings that are not withdrawn or corrected after being served with a motion for sanctions. In other words, upon a finding of frivolousness under subsec. (2)(b), it is now mandatory that a circuit court award as damages the actual costs incurred "as a result" of the frivolous action. This result is apparent because the circuit court retains discretion to award such damages even if a filing is withdrawn or corrected, as evidenced by the legislature's use of "may" in subsec. (2)(a).

¶73 Here, the Town asserts that Eagle Cove's amended complaint and its continuation of the lawsuit, including the motions for relief from the judgment, were frivolous. The Town observes that the claim against it for a violation of WIS. CONST. art. I, § 18 was litigated in the federal action, resulting in a final judgment on the merits of that claim. According to the Town, Eagle Cove's state court action against it is frivolous not just because the claims against it are all precluded, but also because the federal courts have concluded that the Town was never properly in the action, as it had no relevant land use authority regarding Eagle Cove's property. *See Eagle Cove I*, 734 F.3d at 680 ("Woodboro chose to be subordinate to Oneida's zoning ordinance, and thereby relinquished its jurisdiction over land use regulations to the County."). [23]

---

[23] Eagle Cove does not present any argument regarding the construction of WIS. STAT. § 895.044. Its argument regarding sanctions is limited to the issue of whether its filings were, in fact, frivolous.

¶74     We conclude, as a matter of law, that the present action against the Town was frivolously commenced and maintained. Even aside from the applicability of claim preclusion, it should have been obvious to Eagle Cove that the Town had no authority over the land use decisions that thwarted its desired Bible camp.[24]     The fact that the circuit court found that some of Eagle Cove's arguments for avoiding claim preclusion arguably demonstrated good faith does nothing to undercut the plain fact that Eagle Cove was suing the Town for something it had not done and could not do.

---

[24] Eagle Cove argues the Town did, in fact, maintain authority over the zoning regulations and was therefore a proper party. As an initial matter, Eagle Cove attempts to cabin the scope of the Seventh Circuit Court of Appeals' ruling regarding the Town's jurisdiction by arguing that opinion addressed only an as-applied "total exclusion" challenge to the zoning regulations, whereas the various claims here include facial challenges. But the Seventh Circuit's decision does not mention any unique attributes of an as-applied challenge; rather, the court noted that Eagle Cove's "total exclusion" argument was "predicated, and in fact depends, on the assumption that Woodboro has jurisdiction to implement land use regulations on the subject property." *See* ***Eagle Cove Camp & Conference Ctr., Inc. v. Town of Woodboro***, 734 F.3d 673, 679 (7th Cir. 2013) (***Eagle Cove I***). The court, after substantial analysis, flatly rejected that contention. ***Id.*** at 679-80. Eagle Cove fails to explain why any arguable distinction between its as-applied and facial challenges makes a difference as to the issue of the Town's land use authority.

Alternatively, Eagle Cove suggests the County was a mere instrumentality of the Town because the County was required to adopt the Town's land use plan under WIS. STAT. § 59.69(1). The subsection discussing the relationship between a county's development plan and a town's master plan is § 59.69(3)(b), not subsec. (1), and it states that a county's development plan must incorporate a town's master plan only in counties with a population of at least 485,000—well in excess of Oneida County's estimated 2018 population of 36,383. *See* Wisconsin Legislative Reference Bureau, *Wisconsin Blue Book 2019-2020*, at 535 (2019).

Additionally, we fail to see the merit in Eagle Cove's assertion that the Town somehow caused an independent injury by adopting the County ordinance. Eagle Cove does not dispute that its proposed Bible camp required County approval because it affected shorelands. *See* WIS. STAT. § 59.692(2)(a) (stating that county ordinances pertaining to shoreland zoning "shall not require approval or be subject to disapproval by any town or town board"). Although Eagle Cove notes the Town did approve the County zoning ordinance with respect to the non-shoreland areas, Eagle Cove does not argue the Town had any authority to grant or deny its rezoning or CUP applications. The denial of those applications is the fulcrum on which all of Eagle Cove's claims pivot, and those were solely actions of the County.

¶75 Accordingly, we conclude the circuit court erred by denying the Town's motion for sanctions under WIS. STAT. § 895.044. The Town, by its motion to dismiss, notified Eagle Cove and the circuit court that Eagle Cove's amended complaint was frivolous under that section. The Town filed a formal motion for sanctions on October 31, 2014. At no point did Eagle Cove correct or withdraw its pleading; instead, it continued to litigate in an attempt to avoid the preclusive effect of the federal court judgment, including by filing the "Renewed Motion for Reconsideration" that necessitated further response from the Town. Under these circumstances, and given our determination as a matter of law that the claims against the Town were frivolous, the circuit court was required to award the Town damages under § 895.044(2)(b), measured by the actual costs the Town incurred as a result of the commencement and continuation of Eagle Cove's frivolous action against the Town, beginning with the amended complaint's filing.

¶76 We therefore reverse the portion of the circuit court's January 23, 2015 decision in which it denied the Town's WIS. STAT. § 895.044 motion. The case is remanded for a determination of the actual costs that the Town incurred as a result of Eagle Cove's frivolous commencement and continuation of the action against the Town. *See* § 895.044(2)(b). Additionally, because we have concluded that the action was frivolous, the Town is also entitled to damages in an amount sufficient to compensate it for the reasonable attorney fees it incurred in this appeal. *See* § 895.044(5). We affirm the order in all other respects.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

Not recommended for publication in the official reports.

39