# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1269 |
| COMPLETE TITLE: | John Teske, Julie A. Teske, Katherine Teske and Elle Teske,<br>           Plaintiffs-Appellants,<br>United HealthCare Insurance Company,<br>           Subrogated Party-Plaintiff,<br>    v.<br>Wilson Mutual Insurance Company,<br>           Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 832,917 N.W.2d 233
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 4, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 18, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Fond du Lac |
| JUDGE: | Peter L. Grimm |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | ABRAHAMSON, J. did not participate. |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Corrado Cirillo* and *Olsen, Kloet, Gunderson & Conway*, Sheboygan. There was an oral argument by *Corrado Cirillo*.

For the plaintiffs-appellants, there was a brief filed by *Keith E. Trower* and *Warshafsky, Rotter, Tarnoff & Bloch, S.C.*, Milwaukee. There was an oral argument by *Keith E. Trower*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1269
(L.C. No. 2016CV500)

STATE OF WISCONSIN       :       IN SUPREME COURT

**John Teske, Julie A. Teske, Katherine Teske and Elle Teske,**

       Plaintiffs-Appellants,

**United HealthCare Insurance Company,**

       Subrogated Party-Plaintiff,

       v.

**Wilson Mutual Insurance Company,**

       Defendant-Respondent-Petitioner.

**FILED**

**JUN 4, 2019**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed in part, reversed in part.*

¶1 ANN WALSH BRADLEY, J. The petitioner, Wilson Mutual Insurance Company (Wilson), seeks review of an unpublished decision of the court of appeals reversing the circuit court's order that determined the Teskes' claims were barred by the

doctrine of claim preclusion.[1] Wilson contends that the circuit court correctly dismissed the Teskes' claims because the claims could have been brought in a prior action between the same parties.

¶2 Specifically, Wilson asserts that claim preclusion applies to bar all of the plaintiffs' claims because all three elements of claim preclusion are established. It contends that the parties to the first and second actions were the same, or were in privity. Wilson argues next that identity of causes of action is present because the claims in this lawsuit and the previous lawsuit arose from the same common nucleus of operative facts. Finally, it advances that there was a final judgment on the merits in the first action.

¶3 We conclude that claim preclusion bars the claims brought by Julie, Katherine, and Elle Teske in this second action. Accordingly, we reverse that part of the decision of the court of appeals that allowed their claims to proceed. However, we are evenly divided as to whether claim preclusion bars the claims brought by John Teske. As a result, we affirm

---

[1] Teske v. Wilson Mut. Ins. Co., No. 2017AP1269, unpublished slip op. (Wis. Ct. App. May 9, 2018) (reversing order of the circuit court for Fond du Lac County, Peter L. Grimm, Judge).

the court of appeals' decision that allowed John's claims to proceed.[2]

I

¶4 This case arises from a car accident in Fond du Lac County on November 24, 2013. The underlying facts of the accident are undisputed.

¶5 Emily Teske was driving a vehicle in which her mother, Julie, and two sisters, Katherine and Elle, were passengers. John Teske, Julie's husband and Emily, Katherine and Elle's father, was not in the car. Julie, Emily, Katherine, and Elle were all seriously injured after their vehicle was rear-ended by a car driven by Sabrina Srock. The force of the collision propelled the Teskes' car into the oncoming lane, where it struck a vehicle driven by Patrice Rog, who was also injured.

¶6 Srock carried an automobile insurance policy with State Farm that provided a policy limit of $100,000 per person and $300,000 per accident. The Teskes carried a policy with Wilson, which as relevant here contained underinsured motorist (UIM) coverage with a policy limit of $500,000 per person, per accident. Importantly, the Wilson policy also incorporated a "reducing clause" which "permits a setoff from the insured's UIM

---

[2] See Wingra Redi-Mix, Inc. v. Burial Sites Preservation Bd., 2018 WI 54, ¶1, 381 Wis. 2d 601, 912 N.W.2d 392 ("The decision of the court of appeals is affirmed by an equally divided court."); Gruhl Sash & Door Co. v. Chicago, M. & St. P. Ry. Co., 173 Wis. 215, 180 N.W. 845 (1921) (explaining that when the court is equally divided, the order appealed from is affirmed).

coverage [in] the amount paid to the insured by the underinsured tortfeasor."[3]

¶7 The accident resulted in two separate lawsuits. In the first action, Julie Teske brought a negligence claim against Srock and her insurer, State Farm, in Milwaukee County circuit court.[4] Katherine and Elle were also named as plaintiffs, although as minors they were represented by a guardian ad litem.

¶8 Pursuant to a minor settlement agreement,[5] the parties settled the lawsuit and agreed how the money from the various insurers would be split. State Farm tendered its $300,000 policy limit, but the amount was insufficient to cover the full medical expenses incurred by Rog and the Teskes. The amount was ultimately split between the Teskes and Rog, with the Teskes receiving $255,000 and Rog receiving $45,000.

¶9 Applying the policy's reducing clause, Wilson agreed to pay the Teskes $245,000. It arrived at this amount by

---

[3] _Dowhower ex rel. Rosenberg v. West Bend Mut. Ins. Co._, 2000 WI 73, ¶1, 236 Wis. 2d 113, 613 N.W.2d 557.

[4] The Honorable David Hansher presided.

[5] Pursuant to Wis. Stat. § 807.10(1) (2013-14),

> A compromise or settlement of an action or proceeding to which a minor or individual adjudicated incompetent is a party may be made by the guardian, if the guardian is represented by an attorney, or the guardian ad litem with the approval of the court in which such action or proceeding is pending.

All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

4

beginning with its $500,000 UIM policy limit and subtracting the $255,000 the Teskes received from State Farm.

¶10 Each member of the Teske family received proceeds from the insurance settlement as set forth in the minor settlement agreement. Specifically, Julie received $264,000, Katherine received $40,000, Elle and Emily received $35,000 each, and John received $20,000.

¶11 Also incorporated into the minor settlement agreement was a "Pierringer Release."[6] Pursuant to the Pierringer Release, the Teskes released all of their claims against Srock and State Farm. The Teskes partially released Wilson to the extent of the $245,000 it paid. However, they explicitly "reserved the right to pursue further claims for UIM benefits against [Wilson] and [Wilson] has not waived any defenses to such future claims." The minor settlement agreement was signed by each member of the Teske family,[7] as well as a representative of Wilson, and approved by the circuit court.

---

[6] "A Pierringer release operates as a satisfaction of that portion of the plaintiff's cause of action for which the settling joint tortfeasor is responsible, while at the same time reserving the balance of the plaintiff's cause of action against a nonsettling joint tortfeasor." Imark Indus., Inc. v. Arthur Young & Co., 148 Wis. 2d 605, 621, 436 N.W.2d 311 (1989); see Pierringer v. Hoger, 21 Wis. 2d 182, 184-85, 124 N.W.2d 106 (1963). It provides that the plaintiff "will assume or satisfy that portion of the liability that is determined to be the responsibility of the settling joint tortfeasor." Imark Indus., 148 Wis. 2d at 621.

[7] Although they were not named parties in the lawsuit, Emily and John each signed the minor settlement agreement, under which each received the stated proceeds. See supra, ¶10.

5

¶12 After releasing Srock and State Farm, Julie, Katherine, and Elle amended their complaint and added Wilson as a defendant. At issue in this amended declaratory action was whether the reducing clause in the Wilson policy was properly applied. Venue was transferred to Sheboygan County, and the Sheboygan County circuit court[8] determined that the reducing clause was unambiguous, valid, and applicable. Julie, Katherine, and Elle appealed and the court of appeals affirmed. Teske ex rel. Harding v. Wilson Mut. Ins. Co. (Teske I), No. 2015AP208, unpublished slip op. (Wis. Ct. App. Aug. 19, 2015). The same three Teskes petitioned for review, which this court denied, thus ending the first action.

¶13 Following the resolution of the first action, John, Julie, Katherine, and Elle brought this second lawsuit. They alleged that Emily, as the driver at the time of the accident, was negligent in the operation of the Teske vehicle. However, they sued Wilson directly as Emily's insurer pursuant to Wisconsin's direct action statute.[9]

---

[8] The Honorable Angela W. Sutkiewicz presided.

[9] Wisconsin Stat. § 632.24, the "direct action" statute, "provides that any liability policy covering negligence makes the insurance company liable to the person entitled to recover against the insured up to policy limits. Under the direct action statute, the complaining party may allege the insured's conduct, and the insurer's liability therefor, directly against the insurer." Estate of Otto v. Physicians Ins. Co. of Wis., Inc., 2008 WI 78, ¶32, 311 Wis. 2d 84, 751 N.W.2d 805. The statute provides:

> Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to

(continued)

6

¶14 Moving for summary judgment, Wilson argued that the Teskes' negligence action was barred by the doctrine of claim preclusion. Focusing on the first two elements of claim preclusion, identity of parties and identity of causes of action, it asserted that there was identity between the parties in both lawsuits. It based this argument on the observation that Wilson, Julie, Katherine and Elle were all named plaintiffs in the first action. Wilson also observed that although John was not formally named a party in the first action, he participated and received proceeds from the minor settlement agreement.

¶15 Wilson also contended that there was identity between the causes of action in both lawsuits. Specifically, it argued that the actions arose from a single event—the November 24, 2013 accident.[10]

---

the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

§ 632.24.

[10] Wilson did not make a specific argument regarding the third element of claim preclusion, a final judgment on the merits, other than to assert that "[t]here is no dispute that the Sheboygan County Circuit Court entered a final judgment on the merits dismissing the Teskes' prior lawsuit."

7

¶16 The circuit court agreed with Wilson and granted the motion for summary judgment. It determined that "there is no dispute as to the technical identity between the parties given the captions and pleadings of the suits and the involvement of the parties in the litigation and the minor settlement and executing documents and such."

¶17 Additionally, the circuit court concluded that there was an identity of the causes of action in the first and second lawsuits, explaining: "The methodology or the phraseology refers to a concept of a transaction which has a natural grouping of a common nucleus of operative facts, and here the facts are all consistent about the horrific accident on November 24th, 2013, on Highway 23 near Mount Calvary." Finally, it determined that a final judgment on the merits had been reached. Accordingly, the circuit court concluded that claim preclusion barred the second action.

¶18 The Teskes appealed, and the court of appeals reversed. Teske v. Wilson Mut. Ins. Co. (Teske II), No. 2017AP1269, unpublished slip op. (Wis. Ct. App. May 9, 2018). Contrary to the circuit court, the court of appeals determined that claim preclusion did not bar the second action. It reasoned that "[t]he current tort action involves litigation of different facts and legal theories, specifically the facts of the accident versus the interpretation of whether the reducing clause in Wilson's policy applied." Id., ¶9. As opposed to the first action, which "was a contract action . . . requir[ing] the court to interpret Wilson's UIM policy provisions[,]" the second

8

action "will examine Emily's alleged negligence and, if any, whether her negligence was a cause of the Teskes' injuries." Id.

¶19 Accordingly, the court of appeals concluded that "[t]he two actions involve neither a common 'nucleus of facts' nor legal question." Id. Thus in the court of appeals' view, "there is no requirement in law or equity requiring these distinctly separate claims to be litigated together." Id.

II

¶20 We are asked to review the court of appeals' decision concluding that claim preclusion does not bar the Teskes' second action. Whether claim preclusion applies under a given factual scenario is a question of law we review independently of the determinations rendered by the circuit court and court of appeals. Federal Nat'l Mortg. Ass'n v. Thompson, 2018 WI 57, ¶28, 381 Wis. 2d 609, 912 N.W.2d 364.

¶21 This question arises in the context of a motion for summary judgment. We similarly review a summary judgment determination independently, without deference to the circuit court or court of appeals. Shugarts v. Mohr, 2018 WI 27, ¶17, 380 Wis. 2d 512, 909 N.W.2d 402. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

III

¶22 To determine whether claim preclusion bars this second action, we address each of the three elements of claim preclusion with respect to the facts of this case.

¶23 "The doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences." Kruckenberg v. Harvey, 2005 WI 43, ¶19, 279 Wis. 2d 520, 694 N.W.2d 879 (citations omitted). Pursuant to claim preclusion, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." Lindas v. Cady, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994) (quoting DePratt v. West Bend Mut. Ins. Co., 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983)).

¶24 Claim preclusion is "designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand." N. States Power Co. v. Bugher, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995) (quoting Purter v. Heckler, 771 F.2d 682, 689-90 (3d Cir. 1985)). The doctrine "provides an effective and useful means to establish and fix the rights of individuals, to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, to prevent inconsistent decisions, and to encourage reliance on adjudication." Kruckenberg, 279 Wis. 2d 520, ¶20 (citations omitted). It further recognizes

that "endless litigation leads to chaos; that certainty in legal relations must be maintained; that after a party has had his day in court, justice, expediency, and the preservation of the public tranquility requires that the matter be at an end." Id. (citations omitted).

¶25 Three elements are required to establish the application of claim preclusion to bar an action: (1) an identity between the parties or their privies in the prior and present lawsuits; (2) an identity of the causes of action in the two lawsuits; and (3) a final judgment on the merits in a court of competent jurisdiction. N. States Power Co., 189 Wis. 2d at 551. We address each in turn.

A

¶26 We begin our claim preclusion analysis by addressing the first element, identity between the parties or their privies in the prior and present lawsuits. Id.

¶27 This court has previously stated that there is an identity of parties when the parties are "for the most part, identical." Wickenhauser v. Lehtinen, 2007 WI 82, ¶28, 302 Wis. 2d 41, 734 N.W.2d 855 (citing Sopha v. Owens-Corning Fiberglas Corp., 230 Wis. 2d 212, ¶48 n.28, 601 N.W.2d 627 (1999)). For example, case law provides that this element is met when the two actions involve a closely-held corporation in one case and its principal shareholder in the other. Wickenhauser, 302 Wis. 2d 41, ¶29 n.12 (citing Manu-Tronics, Inc. v. Effective Mgnt. Sys., Inc., 163 Wis. 2d 304, 315, 471 N.W.2d 263 (Ct. App. 1991)). Similarly, an owner of property

11

and a successor in interest to that property are in privity for purposes of claim preclusion.  Kruckenberg, 279 Wis. 2d 520, ¶23.

¶28 With regard to the claims made by Julie, Katherine, and Elle, we need not reach a privity analysis because identity of parties is distinctly present.  Julie, Katherine, and Elle were named parties in both the first action and the present action.  Likewise, Wilson was a named party in both actions.  Thus, because Julie, Katherine, Elle, and Wilson were all named parties in the two actions, identity of parties exists with respect to those named parties.

¶29 However, we are equally divided as to whether the identity of parties element is met with regard to John.  Thus, we affirm the court of appeals' decision that allowed John's claims to proceed.

B

¶30 We turn next to address the second element of claim preclusion, identity of the causes of action in the two lawsuits.  See N. States Power Co., 189 Wis. 2d at 551.  Because we are equally divided as to whether the first element of claim preclusion is met with regard to John, we need only address the second element with respect to the claims made by Julie, Katherine, and Elle.

¶31 For purposes of determining whether there is an identity of causes of action in two lawsuits, Wisconsin has

adopted the "transactional approach" set forth in the Restatement (Second) of Judgments § 24 (1982).[11] Menard, Inc. v. Liteway Lighting Prods., 2005 WI 98, ¶30, 282 Wis. 2d 582, 698 N.W.2d 738. The transactional approach "reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so." Kruckenberg, 279 Wis. 2d 520, ¶27 (internal quotation and citation omitted). Pursuant to this analysis, "all claims arising out of one transaction or factual situation are treated as being part of a single cause of action and they are required to be litigated together." A.B.C.G. Enters., Inc. v. First Bank Se., N.A., 184 Wis. 2d 465, 480-81, 515 N.W.2d 904 (1994) (quoting Parks v. City of Madison, 171 Wis. 2d 730, 735, 492 N.W.2d 365 (Ct. App. 1992)).

---

[11] Restatement (Second) of Judgments § 24 (1982) provides:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

13

¶32 The concept of a "transaction" connotes a natural grouping or common nucleus of operative facts. Menard, Inc., 282 Wis. 2d 582, ¶30 (citations omitted). "In determining if the claims of an action arise from a single transaction, we may consider whether the facts are related in time, space, origin, or motivation." Id.

¶33 Relying on this second element of the claim preclusion analysis, the court of appeals determined that claim preclusion does not bar the Teskes' second lawsuit. It concluded that despite the fact that the claims in both lawsuits arose from the November 24, 2013 car accident, the requirement of identity of causes of action was not fulfilled.

¶34 The court of appeals' reasoned that "[t]he current tort action involves litigation of different facts and legal theories, specifically the facts of the accident versus the interpretation of whether the reducing clause in Wilson's policy applied." Teske II, No. 2017AP1269, unpublished slip op., ¶9. "The current action will examine Emily's alleged negligence and, if any, whether her negligence was a cause of the Teskes' injuries." Id. In contrast, "[t]he prior action was a contract action, which required the court to interpret Wilson's UIM policy provisions." Id.

¶35 We disagree with the court of appeals. Contrary to the court of appeals' conclusion, we determine that the causes of action in both lawsuits arise from a common nucleus of operative facts——namely, the November 24, 2013 car accident.

14

¶36 The court of appeals' error originates in its approach of examining the legal theories presented in the two actions rather than the underlying facts. Following a transactional analysis, "it is irrelevant that 'the legal theories, remedies sought, and evidence used may be different between the first and second actions.'" Menard, Inc., 282 Wis. 2d 582, ¶32 (quoting Kruckenberg, 279 Wis. 2d 520, ¶26). Rather, "[t]he goal in the transactional approach is to see a claim in factual terms and to make a claim coterminous with the transaction, regardless of the claimant's substantive theories or forms of relief, regardless of the primary rights invaded, and regardless of the evidence needed to support the theories or rights." Kruckenberg, 279 Wis. 2d 520, ¶26.

¶37 With our lens properly focused on the facts instead of the legal theories, it is apparent that the claims made in both the first and second actions arise from the same factual circumstances surrounding the November 24, 2013 car accident. Although the court of appeals viewed the UIM issue in the first action as separate and distinct from the tort claim in the second action, without an underlying tort there can be no UIM claim.

¶38 This court's decision in State Farm Mut. Auto. Ins. Co. v. Gillette, 2002 WI 31, ¶31, 251 Wis. 2d 561, 641 N.W.2d 662, sheds light on the connection between a UIM claim based on contract and the tort claim that necessarily underlies a UIM claim. It explained: "A claim against the insurance company for underinsured motorist coverage is 'an action on the

15

policy and sounds in contract,' although an underlying tortious injury is also involved." Id., ¶25 (citing Sahloff v. W. Cas. & Sur. Co., 45 Wis. 2d 60, 70, 171 Wis. 2d 914 (1969)).

¶39 As the Gillette court highlighted, "[w]hen an insured sues an insurance company for underinsured motorist coverage, contract law and tort law converge. Contract law applies to interpret the insurance policy, but an insured's right to underinsured motorist benefits hinges on the existence of a tort cause of action against the underinsured motorist." Id., ¶31.

¶40 Although the tort cause of action here is against Emily Teske, and the tort underlying the UIM case was that committed by Srock, the two alleged torts arose as part of the same car accident, i.e. the same common nucleus of operative facts. Thus, the negligence claim against Emily could have been litigated in the first action. See Menard, 282 Wis. 2d 582, ¶55. We therefore conclude that the second element of claim preclusion, identity of causes of action, is fulfilled.

C

¶41 Finally, we address the third element of claim preclusion, a final judgment on the merits in a court of competent jurisdiction. See N. States Power Co., 189 Wis. 2d at 551.

¶42 The parties exhaustively litigated the issue of whether the reducing clause in the Wilson policy applies. Initially, the Sheboygan County circuit court made a determination that the clause applies. This conclusion was

16

affirmed by the court of appeals.   After Julie, Katherine, and Elle petitioned for review, this court denied the petition.

¶43  A final judgment was accordingly reached on the issue of whether the reducing clause in the Wilson policy applies. Such a final judgment has preclusive effect on all matters "which were litigated or which might have been litigated in the former proceedings."  Kruckenberg, 279 Wis. 2d 520, ¶19.  We thus conclude that the third element of claim preclusion is fulfilled.

¶44  In sum, all three elements of claim preclusion are met with regard to Julie, Katherine, and Elle's claims against Wilson.  We therefore conclude that claim preclusion bars the claims brought by Julie, Katherine, and Elle in this second action.  Accordingly, we reverse that part of the decision of the court of appeals that allowed their claims to proceed.

¶45  However, we are evenly divided as to whether claim preclusion bars the claims brought by John.  As a result, we affirm the court of appeals' decision that allowed John's claims to proceed.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

¶46  SHIRLEY  S.  ABRAHAMSON,  J.,  withdrew  from participation.