**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 26, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP448**

Cir. Ct. No. **2020CV35**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

CARLA J. CARNS,

PLAINTIFF-APPELLANT,

V.

RODNEY A. CARNS,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Lafayette County: DUANE M. JORGENSON, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Carla Carns appeals a circuit court order dismissing all of her claims against Rodney Carns on summary judgment.  Carla's operative complaint challenges the validity of a lease under which Rodney is allowed to rent tillable portions of land that Carla was awarded as part of the property division when Carla and Rodney were divorced in 2010.[1]  More specifically, Carla claims that the lease is invalid to the extent that it requires her to lease the land to Rodney after an initial ten-year lease period provided for in the lease, a period that ended on February 28, 2020.

¶2     The circuit court ruled in part that two related claims made by Carla are barred under the doctrine of claim preclusion:  that the lease is void because it extends beyond 15 years, in violation of the feudal tenures provision of the Wisconsin Constitution; and because it is an impermissible "perpetual lease."  The court deemed these claims barred because in 2011 Carla raised them in a separate, unsuccessful lawsuit, claiming that the lease is invalid because it violates the feudal tenures provision and is "perpetual."  We conclude that, in this action, Rodney successfully carries his burden of proving his defense of claim preclusion as to these two specific claims and on this basis we affirm dismissal of Carla's claims that the lease violates the feudal tenures provision and is invalid because it is a "perpetual" lease.

¶3     Separately, the circuit court relied in part on statutes addressing rental agreements between landlords and tenants in chapter 704 of the Wisconsin Statutes to rule that, even if Carla's remaining claims challenging the validity of

---

[1]  Because the parties share a surname, we use their first names, as the parties also do in their briefing on appeal.

the lease are not barred by claim preclusion, the parties effectively created a "year-to-year" periodic tenancy that began at the end of the initial ten-year lease period, which Rodney may trigger each year by requesting to lease the land for an additional year. We conclude that Carla fails to show that the circuit court did not correctly apply relevant legal standards to reach this periodic tenancy result. Accordingly, we also affirm dismissal of the remaining claims challenging the court's periodic tenancy decision.

## BACKGROUND

¶4  Carla and Rodney were divorced in January 2010. The judgment of divorce incorporates a marital settlement agreement. As part of the property division, the settlement agreement awards Carla farmland that includes tillable acres. In the settlement agreement, Carla "hereby grants" to Rodney "the right to cash rent the tillable acres" "for a term of ten years" after entry of the judgment of divorce, "terminating on February 28, 2020." The settlement agreement provides a schedule for Rodney to pay specific amounts to Carla over this initial ten-year lease term (February 2010-February 2020), although the details regarding the timing and amounts of required payments over the initial ten years do not matter to any issue on appeal.

¶5  Turning to the obligations of the parties after February 2020, the settlement agreement provides:

> After the initial ten-year term, [Carla] agrees to rent said real estate to [Rodney] at the current market rate. In the event that [Rodney] no longer desires to rent the acreage, [Rodney] shall give [Carla] notice thereof no later than September 15th of 2019.

3

¶6      The parties also entered into an agreement entitled Farm Land Lease. The Farm Land Lease contains language that parallels that used in the settlement agreement regarding the land lease. Neither party shows that there is a difference in the language of these two documents that matters to any issue in this appeal. We use the term "lease" to refer to the common lease-related provisions in the settlement agreement and the Farm Land Lease.

*First Action*

¶7      In 2011, Carla brought an action against Rodney regarding the lease, which we call "the first action" to distinguish it from the instant action.[2] One of Carla's claims in the first action is irrelevant to this appeal, namely, that the circuit court should void the lease because Rodney allegedly breached it by modifying a waterway on the leased land. However, Carla's other claim is relevant here. Carla asked the court to declare the lease "void pursuant to Article I, Section 14 of the Wisconsin Constitution," because under the lease Rodney "can continue to rent the land governed by this lease for as long as [Rodney] chooses," and "[n]o definitive end for this lease can be provided."

¶8      As background, Article I, § 14 of our state constitution is entitled "Feudal tenures; lease; alienation." It provides in pertinent part:

> [F]eudal tenures are prohibited. Leases and grants of agricultural land for a longer term than fifteen years in which rent or service of any kind shall be reserved, and all fines and like restraints upon alienation reserved in any grant of land, hereafter made, are declared to be void.

_____

[2] The Hon. William D. Johnston presided over the first action and the Hon. Duane M. Jorgenson presided over the instant action. We use the same phrase, "the circuit court," in referring to the actions of both judges.

We refer to this as "the feudal tenures provision."

¶9    Explaining this claim further, Carla's position in the first action was that the lease is invalid under the terms of the feudal tenures provision because it is a lease "of agricultural land for a longer term than fifteen years in which rent or service of any kind shall be reserved."  Carla contended that the lease is "perpetual," because "the only way for the lease to ever end is for [Rodney] to choose to stop renting the land."  (Capitalization altered.)  She argued that there could be no mistake about the meaning of the lease:

> The words of the contract and of Rodney are very clear:
> Rodney can continue to rent the land governed by this lease
> for as long as Rodney chooses.  No definitive end for this
> lease can be provided [because] Carla is mandated to rent
> the land covered in the lease to Rodney at "market value"
> following the initial period of 10 years, [during which
> period] the rental rate is locked in.

(Substituting names for party designations.)  Emphasizing the perpetual-lease concept, Carla argued,

> the lease is completely transferable[,] so even if [Rodney]
> chooses not to rent [the land] for his own use as a cash
> grain farmer[,] he can sell the lease to another individual
> who could pay the "market value" or sub-lease it to another
> individual who could pay the "market value" (and keep any
> arbitrage that may exist from such a transaction).

¶10    During a hearing in the circuit court, Carla contended that the lease should be invalidated for any term beyond the initial ten years.  Her argument was that any other court ruling

> would allow [Rodney] to rent the property to another
> individual in perpetuity, and if there happened to be any
> arbitrage that was available because of said transaction, he
> could keep that.

5

> If this lease was actually for 10 years and only 10 years, Ms. Carns would be able to make some decisions with her land at the end of the lease.

Carla criticized Rodney for allegedly failing to provide the court with "insight as to how long the lease actually extends beyond" the initial ten-year period. Carla contended that she "is entitled to summary judgment because the lease is void under" the feudal tenures provision, because the "clear language of the lease and the testimony of [Rodney] indicates that [Rodney] has a perpetual right to lease the land, governed by the lease, at market value for as long as he chooses, which is a clear violation of" the feudal tenures provision.

¶11     In response, Rodney argued in part that nothing in the lease language "suggest[s] that a perpetual lease, or even a lease for over 15 years, is required." He further argued that the feudal tenures provision prohibits only "feudal tenanc[y]," and does not prohibit "free land owners" such as Carla from "the ability to lease their land as they please," without interference by "'any superior landlord or sovereign.'" The purpose of the feudal tenures provision, he argued, is

> merely to promote land ownership in fee simple and to prohibit feudal land tenures, which were [historically] characterized by large tracts of land owned by a single party, often a sovereign, which were parceled out to individuals who were forced to work the land or perform military service for the (land) lord for long periods of time without any means to withdraw from the obligation to the land and lord.

Rodney argued that the fact that Carla did not, as part of the divorce settlement, negotiate a right to limit Rodney's freedom to sub-let the property did not render Rodney a "'superior landlord or sovereign'" relative to Carla. Rodney argued that Carla, as a landlord, sought to turn the feudal tenures provision on its head: "This obscure and arcane provision of the Wisconsin Constitution was intended to protect tenants from oppressive landlords, not the other way around."

6

¶12 The circuit court rejected Carla's argument on the (irrelevant to this appeal) waterway-modification issue. It also rejected her "perpetual lease" argument involving the feudal tenures provision. The court stated that the feudal tenures provision does not apply, because it is limited to preventing a historical "practice that basically tied the folks to the land and to the landowner," as in the "the feudal systems of Europe," and that it is only such practices that "would not be allowed in the state of Wisconsin." The court added, "I think the date here of 10 years makes [the feudal tenures provision] inapplicable."[3] Accordingly, the court denied Carla's request for summary judgment against Rodney and granted Rodney's motion for summary judgment against Carla, dismissing "in its entirety with prejudice" the action containing "all claims brought by" Carla against Rodney.

*The Instant Action*

¶13 Carla commenced this action in April 2020. The operative complaint provides the basic history summarized above regarding the divorce and pertinent terms of the lease, and then proceeds to make additional allegations that include the following. Over the course of the initial ten-year period contemplated in the lease, Rodney paid Carla at the rates stated in the lease and farmed the land each year. In July 2019, in advance of the February 2020 close of the initial ten-

___

[3] We pause to explain our interpretation of the circuit court's sparse comments in resolving this set of issues in the first action. We interpret the court to have rejected the merits of Carla's claim based on the feudal tenures provision and a purported "perpetual" lease for multiple reasons, including but not limited to the court's determination that the existence of an initial ten-year period undermined Carla's arguments. We note that Carla did not move for clarification or reconsideration of the circuit court decision or to appeal it.

year period, Rodney informed Carla that he wanted to "continue to rent the property at a fair market value."[4]

¶14     The operative complaint states that Carla "challenges the validity of a perpetual lease right" based on four claims for relief:  (1) that the lease "is invalid as a matter of law because the settlement agreement fails to sufficiently indicate that the parties intended to create a perpetual lease right"; (2) that the lease "is invalid as a matter of law because the settlement agreement fails to sufficiently define a lease right being granted to [Rodney] in perpetuity"; (3) that "any perpetual lease rights for the benefit of [Rodney] for [Carla's] property [are] void" under Article I, Section 14 of the Wisconsin Constitution; and (4) that the lease "is invalid as a matter of law [because it lacks] a definitive statement as to the applicable terms of the lease right being granted."

¶15     As substantive relief the complaint requests:  "a declaratory judgment that [Rodney's] perpetual lease is invalid as a matter of law"; "a declaratory judgment that [the] perpetual lease violates the Wisconsin Constitution"; "an order enjoining [Rodney] from enforcing any further right to lease against [Carla]"; and in the alternative, "an order defining the required terms of the lease."

¶16     After both sides moved for summary judgment, the circuit court made the following rulings.

---

[4] For context, we note that the complaint also alleged that in November 2019 Carla and Rodney entered into a new agreement, entitled Cash Farm Lease, in order to preserve the status quo and permit Carla to continue receiving income from the land.  However, nothing about this separate agreement is pertinent to the issues we resolve on appeal.

¶17    The circuit court concluded that "claim preclusion in this case is appropriate regarding the notion … that somehow this is a lease in perpetuity." The court noted that, in the first action, the circuit court had addressed Carla's arguments that the lease was "in excess of 15 years" and therefore unconstitutional.

¶18    We pause to note that there is some ambiguity in statements and actions of the circuit court as to whether it intended to rely entirely on claim preclusion as a ground to grant summary judgment (making additional rulings for the benefit of the parties in the event that the claim preclusion ruling was not reversed on appeal), or instead based summary judgment only in part on its claim preclusion ruling.  However, it does not matter which the court intended, because as we explain below we apply the pertinent legal standards on de novo review, affirming the court's dismissal of some claims based on claim preclusion as well as its dismissal of other claims on the merits.

¶19    Returning to our background summary, the circuit court in the instant action stated that there is "a lack of clarity" in the lease regarding the nature of lessor-lessee relationship after the initial ten-year period, which "makes [Carla's] action for declaratory judgment appropriate[,] so as to delineate the rights and obligations under the marital settlement agreement and judgment of divorce."

¶20    Interpreting the lease and consulting pertinent statutory sources, the circuit court made the following additional rulings.  It rejected Rodney's argument that he is "entitled to an extension of 10 years [beyond] the original 10-year lease," in part on the ground that the lease is "very specific as to its terms and conditions" addressing the initial ten-year period, but it is "anything but specific"

in addressing periods to follow. The court also rejected Carla's argument that the lease must be invalidated because it is "invalid" and "undefined."

¶21 The circuit court determined that the parties created a "year-to-year lease" after the end of the initial ten-year period, with Rodney making the determination each year whether to continue the lease "at the current market rate."[5] The court stated that it took into account the intent of the parties, as expressed in the lease, when considered in light of applicable statutory provisions, such as WIS. STAT. § 704.03(2) (2019-20).[6] This statutory provision establishes in pertinent part that, when a lease for more than one year is insufficiently definite as defined in § 704.03(1), and

> the use is agricultural or nonresidential, the tenant becomes a year-to-year tenant without regard to the rent-payment periods. Except for duration of the tenancy and matters within the scope of [WIS. STAT. §§] 704.05 and 704.07, the tenancy is governed by the terms and conditions agreed upon. Notice as provided in [WIS. STAT. §] 704.19 is necessary to terminate such a periodic tenancy.

Section 704.03(2). The court also cited *Schneider v. Schneider*, 132 Wis. 2d 171, 175, 389 N.W.2d 835 (Ct. App. 1986) ("As a general rule, when a contract is of indefinite duration, we will imply a reasonable time for performance."). It further stated that it was taking into account extrinsic evidence to assist the court in construing ambiguity in the lease.

---

[5] As to the proper calculation of a market rate, the circuit court stated that it had not been provided with any evidence on this topic and therefore it could not address it. Neither party on appeal raises an issue regarding the specific market rate topic.

[6] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

10

¶22   We interpret the circuit court to have determined, consistently with the terms of the lease, that Rodney is obligated to notify Carla no later than September 15th each year if he intends to lease the land at the market rate for one additional year, beginning the following February, and that the lease terminates on the first year that Rodney fails to do this.

¶23   Carla appeals the circuit court's grant of a motion for summary judgment in favor of Rodney.  Rodney does not cross appeal any ruling of the circuit court adverse to him.

## DISCUSSION

¶24   We conclude that Rodney has shown that claim preclusion bars all of Carla's claims in the instant action involving the feudal tenures provision of the state constitution and perpetual leases ("the perpetuity claims"), because the perpetuity claims involve "'matters which were litigated or which might have been litigated in'" the first action.  *See* ***Teske v. Wilson Mut. Ins. Co.***, 2019 WI 62, ¶23, 387 Wis. 2d 213, 928 N.W.2d 555 (quoting ***Lindas v. Cady***, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994), in turn quoting ***DePratt v. West Bend Mut. Ins. Co.***, 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983)).

¶25   Separately, regarding the remaining claims not barred by claim preclusion, we reject on the merits Carla's narrow argument that the circuit court erred in determining that, beginning after an initial ten-year lease period, the parties created a year-to-year periodic tenancy under WIS. STAT. § 704.03(2).[7]

---

[7] We need not reach whatever argument or arguments Carla may intend to make in asserting that the circuit court erred by dismissing some of Carla's claims on the basis of a decision not "to use its discretion under WIS. STAT. § 806.07," because we affirm the court's
(continued)

¶26     Both the claim preclusion and periodic tenancy issues require us to review a summary judgment determination, which we do independently, without deference to the circuit court.  *See Teske*, 387 Wis. 2d 213, ¶20.  "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Id.*, ¶21.

## I.  CLAIM PRECLUSION

¶27     "Whether claim preclusion applies under a given factual scenario is a question of law we review independently," using the de novo standard without deference to the circuit court.  *Id.*, ¶20.

¶28     Our supreme court has explained the following:

> "The doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences."  Pursuant to claim preclusion, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings."

*Id.*, ¶23 (citations omitted).  A party offering this defense must prove each of three elements:  "(1) an identity between the parties or their privies in the prior and present lawsuits; (2) an identity of the causes of action in the two lawsuits; and (3) a final judgment on the merits in a court of competent jurisdiction."  *Id.*, ¶25; *see also Pasko v. City of Milwaukee*, 2002 WI 33, ¶16, 252 Wis. 2d 1, 643 N.W.2d 72 (party asserting claim preclusion bears the burden of proof on each element).

dismissal decisions for the separate reasons explained in the text of this opinion, without reference of § 806.07.

12

¶29    Carla does not dispute that when the first action and the instant action are compared there is an identity between the parties, and therefore the first element is met, regarding all of her claims.  But she disputes the second and third elements.  We address these elements in turn, and then address Carla's alternative argument that even if claim preclusion does apply, justice requires an exception in this case.

## A.  Identity Of Causes Of Action

¶30    The substantive legal standard for the second element of claim preclusion is the following:

> For purposes of determining whether there is an identity of causes of action in two lawsuits, Wisconsin has adopted the "transactional approach" set forth in the Restatement (Second) of Judgments § 24 (1982).  The transactional approach "reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so."  Pursuant to this analysis, "all claims arising out of one transaction or factual situation are treated as being part of a single cause of action and they are required to be litigated together."
>
> The concept of a "transaction" connotes a natural grouping or common nucleus of operative facts.  "In determining if the claims of an action arise from a single transaction, we may consider whether the facts are related in time, space, origin, or motivation."

*Teske*, 387 Wis. 2d 213, ¶¶31-32 (citations and footnote omitted).  In addition, as noted above, "a 'final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings.'"  *Id.*, ¶23 (quoted source omitted).

¶31    Under the transactional approach,

> "[I]t is irrelevant that 'the legal theories, remedies sought, and evidence used may be different between the first and

> second actions.'" Rather, "[t]he goal in the transactional approach is to see a claim in factual terms and to make a claim coterminous with the transaction, regardless of the claimant's substantive theories or forms of relief, regardless of the primary rights invaded, and regardless of the evidence needed to support the theories or rights."

*Id.*, ¶36 (citations omitted).

¶32 With that additional legal context, we begin by explaining why we agree with Carla that claim preclusion does not apply to bar her claim in this action that the lease "is invalid as a matter of law [because it lacks] a definitive statement as to the applicable terms of the lease right being granted." This is an issue that the circuit court in the instant action addressed on the merits in determining that, beginning after an initial ten-year lease period, the parties created a year-to-year periodic tenancy under WIS. STAT. § 704.03. We reject Rodney's broad assertions that claim preclusion applies to all of Carla's claims in the instant action, which leaves the periodic tenancy issue that we address separately below.

¶33 It is true that, as we discuss further below, one "transaction" that was litigated in 2011 is at issue in the instant action: the validity of Rodney's ability to extend the lease. However, Carla did not bring an indefiniteness claim in the first action that involved determining the parties' obligations under the lease after the initial ten years, based on facts involving actual extension of the lease at that point. Instead, as pertinent here, she brought only the perpetuity claims, facially challenging the validity of the lease's potential extendibility, during its initial period. Further, the perpetuity claims in the first action were entirely premised on the concept that the lease *is* definite, but that it is unconstitutional and fatally flawed because it would (definitely) last forever if Rodney and his assigns want it to. In other words, Carla's first action rested in part on the proposition that the

14

theoretical renewal of the lease after the initial ten years would be eternally at Rodney's discretion unless the lease were, as she urged, construed to avoid that result by being invalidated after the initial ten years.

¶34    In addressing claim preclusion issues now, Rodney fails to explain how Carla could reasonably be expected in the first action to have brought the invalid-because-indefinite claim because the entire premise of the first action was that the lease was invalid because it was definite and potentially perpetual.  We acknowledge that this issue is not free from doubt, to the extent that Carla might have been permitted in the first action to bring alternative claims that were based on diametrically opposed premises.  However, we conclude that Rodney does not carry his burden on this issue because his broad brush approach does not explain, based on relevant authority, why we should conclude that claim preclusion must apply to the periodic tenancy issue under these seemingly unusual circumstances.

¶35    We now explain why we agree with Rodney that claim preclusion applies to bar the perpetuity claims.  Carla argues that "[d]ue to the factual differences in time, origin, and motivation between the lawsuits at issue, claim preclusion cannot be sustained" on any of her claims in this action, including the perpetuity claims.  In making this argument, Carla references relevant legal concepts on the second element of the test, as summarized above.  But we disagree with her analysis.  We conclude that, given the nature of the perpetuity claims, a comparison of the facts placed at issue in the two actions reveals that the causes of actions are the same, which is dispositive on the second element.

¶36    As already noted, the following "transaction" was at issue in both the first action and this one:  the lease created as part of the divorce settlement.  More specifically, in each action, based on the same documents, Carla focused her

perpetuity claims on the obligations of the parties *after* the initial ten-year period. At least as to her perpetuity claims, we reject Carla's suggestion that there are two transactions: the initial ten-year term of the lease, and the extension after the initial ten years. Further, there is no dispute that there was no change in facts related to the perpetuity claims between the litigation in each action, with the exception that, as Carla predicted and asked the circuit court to assume in the first action, Rodney confirmed that he wanted to continue to lease the land after the initial ten-year period.

¶37 Carla does not argue that the circuit court in the first action prevented her from having a full and fair opportunity to be heard on the perpetuity claims. *Cf. Kruckenberg v. Harvey*, 2005 WI 43, ¶52 & n.44, 279 Wis. 2d 520, 694 N.W.2d 879 ("[f]airness" has not been "adopted" generally "as a factor in the doctrine of claim preclusion," but in the specific privity context, "courts ask whether the nonparty has had a full and fair opportunity to determine the issue.").

¶38 Carla asserts that the issue of the obligations of the parties after the initial ten years was merely "dormant and conditional" in the first action, given that it was not known in 2011 if Rodney would want to extend the lease. But that is not how the perpetuity claims were presented by Carla in the first action, as the summaries above make clear. In particular, Carla argued in the first action that she was entitled to a ruling from the court that the lease "was actually for 10 years and only 10 years," because that would allow her to plan, to "be able to make some decisions" about what would happen "with her land at the end of the lease."

¶39 Carla now argues that her "'motivation'" changed between the two lawsuits. *See Teske*, 387 Wis. 2d 213, ¶32 (quoted source omitted). This is true in a limited sense. Given the passage of time, it is fair to assume that, by the time of

16

this action, the issue of whether Rodney would continue to lease the land after the initial ten years had become more immediately consequential to her than it had been at the time of the first action, because the effect on her would be immediate and not some years distant. But, again, her first action was premised on her prediction that Rodney would continue to want to lease the land at the end of the initial ten years, and from that premise she sought a ruling based on the perpetuity claims in order to help her plan for that eventuality. Thus, in both actions, Carla expressed her motivation through an explicit argument that she wanted to avoid having to lease the land to Rodney *after the initial ten-year period*.

¶40 In a related argument, Carla suggests that it is a material factual difference between the two actions that the first action also involved an alleged breach of contract involving Rodney's actions on the property, while the instant action does not. But the alleged breach was only an *additional* claim to the perpetuity claims and does not affect the analysis; when the alleged breach is removed, what remains is an identical factual nexus and Carla making what amount to the same perpetuity claims against Rodney in the two actions.

¶41 For these reasons, there is a sufficient identity of causes of action between the perpetuity claims in each action to satisfy the second element of claim preclusion.

**B. Final Judgment**

¶42 Given our decision that claim preclusion applies to bar only the perpetuity claims, little appears to remain of Carla's argument that the third element of claim preclusion does not apply. This is because our decision in Carla's favor on this aspect of the claim preclusion issue renders one of her specific arguments irrelevant: that the final judgment in the first action did not

satisfy the third element because it did not "defin[e] the meaning of the" lease relative to the obligations of the parties after the initial ten-year period, and that the circuit court could not have done so in the first action because the issue was not "ripe." [blue:37-38, reply:2-3]

¶43 The issue is whether there was "a final judgment on the merits in a court of competent jurisdiction" that has not been overturned on appeal. *See Teske*, 387 Wis. 2d 213, ¶¶41-42; *see also* ***State v. Miller***, 2004 WI App 117, ¶28, 274 Wis. 2d 471, 683 N.W.2d 485 ("the common element" for judgments meeting the third claim preclusion element is that they "end[] the litigation on the merits of the claim or claims"). We conclude that Rodney has carried his burden of showing that there has been a final judgment addressing the perpetuity claims that satisfies the third element of claim preclusion. In the first action, the circuit court granted Rodney summary judgment on these claims and dismissed them on the merits and with prejudice. Further, there is no dispute that Carla did not seek reconsideration by the circuit court or another form of post-judgment relief and that she did not appeal the judgment.

¶44 Carla argues that the third element does not apply to any of her claims because the final judgment in the first action was not "relat[ed] to whether the Extension [C]lause created a perpetual lease." Whatever Carla precisely intends to argue in making this assertion, at a minimum it rests on the unsupported premise that, in resolving the third element, we are to parse the substance of the reasoning that the circuit court used in the first action in addressing claims that align with similar claims raised in the subsequent action. Carla fails to support this premise in general. *See **Miller***, 274 Wis. 2d 471, ¶28 ("a final judgment on the merits need not be the result of a full litigation of the claims in order for claim

18

preclusion to apply"; for example, stipulations and default judgments "may meet" that requirement).

¶45    Further, Carla fails to show that this case presents a circumstance in which such parsing could advance her argument.  That is, even if we assume without deciding that the scope of the reasoning used by the circuit court in the first action in addressing the perpetuity claims could be deemed overly narrow—to the point that Rodney could not carry his burden on the third element—Carla fails to show how that reasoning was so narrow that the court did not in fact reach the merits of her contention that the lease was unconstitutional and improperly perpetual due to its potential for extension.  *See supra* note 3.

¶46    In sum, the third element of claim preclusion is met as to the perpetuity claims because in the first action the circuit court resolved the rights of the parties on the merits of those claims, and the judgment became final upon expiration of the time for filing an appeal, given that Carla did not appeal.

### C. Exception

¶47    Carla argues that "[e]ven if claim preclusion does apply, justice requires an exception be made in the instant case."  She attempts to draw parallels to *Kruckenberg*, 279 Wis. 2d 520.  In that case, our supreme court explained in detail the need for, and then adopted, the following as a "narrowly drawn exception" for assertions of claim preclusion in boundary line disputes:  "When an action between parties or their privies does not explicitly determine the location of a boundary line, the doctrine of claim preclusion will not bar a future declaratory judgment action to determine the proper location of the boundary line."  *See id.*, ¶¶41-46.

¶48 Carla's argument on this issue is limited and does not persuade us that she should have been allowed to relitigate the perpetuity claims. She asserts that lease disputes generally, like boundary line disputes, can be subject to over litigation, *see id.*, ¶43, she repeats her "ripeness" concept that is resolved by consideration of her indefiniteness claim by the circuit court and now on appeal, and she briefly recites a series of property-related issues that have public policy implications. Our supreme court provided specific grounds for creating the narrow exception in **Kruckenberg**. *See id.*, ¶¶41-46 (articulating a narrow rule and explaining why "[t]he legal system should, in the present case, be more concerned with deciding the location of the boundary line than with strictly applying the doctrine of claim preclusion"). Carla does not develop a clear argument based on legal authority, much less the weighty argument that would be required to show that an exception must be applied here, contrary to the unambiguous rules addressing the general rule of claim preclusion summarized above. To note only one set of problems, Carla fails to make clear what specific exception the law calls for that might apply in cases other than this one, when stated as a general rule and based on particular important public policy considerations. We are left with more questions than answers about the scope of an appropriate potential special exception.[8]

---

[8] Neither Carla nor Rodney provides a developed argument on the specific issue of whether Rodney or his eventual estate could in some manner potentially transfer or assign his rights under the lease to a third party—either on the merits of that issue or as an issue subject to claim preclusion. Accordingly, we do not address any of these topics in this appeal.

## II. PERIODIC TENANCY

¶49    Carla does not challenge the circuit court's ruling that the parties, in agreeing to the lease, effectively created a year-to-year periodic tenancy that commenced after the end of the initial ten-year period, when the lease is now interpreted consistently with WIS. STAT. § 704.03(2) (quoted *supra* at ¶21). Instead, her only argument is narrow. She argues that the court erred in failing to limit the number of years of the periodic tenancy to one year, and contends that this court "should imply a renewal period of one year" because that is "a reasonable duration to imply." This argument is based on WIS. STAT. § 704.19, which establishes the "notice necessary to terminate periodic tenancies." We disagree that Carla has identified a flaw in the circuit court's application of § 704.03(2) based on § 704.19.[9]

¶50    "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation presents issues of law that we review de novo. *DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶26, 299 Wis. 2d 561, 729 N.W.2d 396.

---

[9] Rodney briefly asserts that the lease as written, without modification, satisfies the requirements of WIS. STAT. §§ 704.03(1) and 706.02, and in making that assertion suggests potential raw material for a cross appeal of the circuit court's decision to grant a year-to-year periodic tenancy. Given the lack of development and the failure to file a cross appeal, we discuss no further the possibility of relief different from that ordered by the circuit court. *See* WIS. STAT. RULE 809.10(2)(b); *Auric v. Continental Cas. Co.*, 111 Wis. 2d 507, 515, 331 N.W.2d 325 (1983).

¶51 We reject Carla's argument based on WIS. STAT. § 704.19. In her opening brief on appeal, Carla quotes § 704.19 but omits a critical provision from that statute. Then, after Rodney makes an argument based on the omitted statutory language, Carla has no reply of substance, effectively conceding the point. We now explain further.

¶52 In her opening brief, Carla notes that WIS. STAT. § 704.03(2) provides that the notice that is required under WIS. STAT. § 704.19 "is necessary to terminate" a periodic tenancy, which as Carla also notes parallels the statement in § 704.19(1) itself that refers to "periodic tenancies," "however created." Having established that the notice requirements described in § 704.19 must be employed to terminate a periodic tenancy, Carla directs us to an incomplete quotation of § 704.19(2).

¶53 We now quote pertinent portions of WIS. STAT. § 704.19(2). We underline the text that Carla relies on and place in italics what she omits:

> **(2)** REQUIREMENT OF NOTICE.
>
> **(a)** <u>A periodic tenancy or a tenancy at will can be terminated by either the landlord or the tenant only by giving to the other party written notice complying with this section</u>, *unless any of the following conditions is met:*
>
> *1. The parties have agreed expressly upon another method of termination and the parties' agreement is established by clear and convincing proof.*

¶54 Based on the text that we now underline, Carla argues that, under WIS. STAT. § 704.19(2)(a), *all* periodic tenancies are terminable by either the landlord and the tenant, upon proper notice, because they "can be terminated by either the landlord or the tenant only by giving to the other party written notice

22

complying with this section." We assume without deciding that this portion of § 704.19(2)(a) has this meaning, at least before one reaches subdivision 1.

¶55   Relying on the exception set forth in WIS. STAT. § 704.19(2)(a)1., Rodney argues that the lease expressly provides for the following methods of termination:   Rodney's "right of first refusal [to purchase the property] upon Carla's [planned] sale of the property, Rodney's notice on September 15th of each year, and in the event of default [of the lease] by Rodney."

¶56   In reply, Carla does not develop an argument that the lease fails to provide for expiration or termination in these ways.  She asserts in a conclusory manner that it is "silent" on the topic.  She further asserts that application of the WIS. STAT. § 704.19(2)(a)1. exception here could "not constitute an 'expressly agreed' 'method' of termination under [§ 704.19(2)(a)], since by that reasoning, every lease that has ever been entered into would meet that burden automatically, which would lead to absurd results and forego any purpose that subsection of []§ 704.19(2)(a) has."  None of these assertions constitute a developed argument.  Carla does not explain an absurdity and fails to show that the § 704.19(2)(a)1. exception must apply in all hypothetical cases if it applies here.  Having failed to provide a developed reply to Rodney's argument, Carla effectively concedes the point.[10]

---

[10] Rodney improperly cites an unpublished per curiam opinion of this court in his brief on appeal.  *See* WIS. STAT. § 809.23(3)(a).  We ignore the citation and associated argument. Counsel should avoid future violations of this rule.

## CONCLUSION

¶57    For all these reasons, we affirm the circuit court order dismissing all of Carla's claims against Rodney in the instant action.

*By the Court*.—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.